## LOWRY v. McMILLAN.

A *technical retraxit* is where a plaintiff, *after declaration filed*, comes *personally* into the court in which his action is brought, and declares he will not proceed further in it: and this is a bar to any subsequent suit for the same cause of action.

A plaintiff, *before declaration filed*, addressed the following authorization and requirement in writing, signed by her, to the prothonotary of the court in which her action was brought: "E. McM. v. J. F. L. In the Court of Common Pleas of H. county: Sir, you are hereby authorized and required to *discontinue for ever*, and *withdraw* the above-stated suit for ever, on the presentation of this paper." This paper was filed of record by the prothonotary: *Held*, that it was not a *retraxit*, but simply a discontinuance or nonsuit, and consequently neither a bar nor estoppel to a subsequent suit for the same cause of action.

A record, if imbued with fraud, may be altered or explained by parol evidence.

In error from the Court of Common Pleas of Blair county.

*May* 22. This was an action on the case for breach of promise of marriage, brought by Eliza McMillan, the defendant in error, against John F. Lowry, the plaintiff in error. This suit was brought to December Term, 1846.

It appeared that a previous suit, for the same cause of action, had been brought by the same plaintiff against the same defendant, in the Court of Common Pleas of Huntingdon county, to April Term,

1846, No. 76 ; and that the said suit had been withdrawn, or discontinued, by virtue of the following order or authority, given by the plaintiff in writing, and addressed to the prothonotary :—

"Eliza McMillan    ⎱ In the Court of Common Pleas of Huntingdon
        *v.*            ⎰ county, No. 76, April Term, 1846.
John F. Lowry.

To JAMES STEEL, Esq., Prothonotary :

  Sir : You are hereby authorized and required to discontinue *for ever*, and withdraw the·above-stated suit *for ever*, on the presentation of this paper.

               ELIZA McMILLAN.
  April 11, 1846."

This paper was filed on the 1st of June, 1846. The *præcipe* and writ in that case was for a breach of promise of marriage. No declaration was ever filed. The general charge of the court (BLACK, P. J.) to the jury, in which the facts of the case are sufficiently stated, and which contains the only answers of the court to defendant's points, was as follows :—

"The defendant has made nine points of law in this cause. [Points read.] Although these points are nine in number, they are only two in substance. They amount to this : 1st. That the agreement to discontinue, and the actual discontinuance of the suit in Huntingdon, constitute a bar to a recovery here. 2d. That there is no evidence before you of such a marriage contract as would justify a verdict for plaintiff.

"I will take up these two points in the order in which I have placed them. It appears that soon after Mr. Lowry was married to his present wife, Mrs. Eliza McMillan issued a writ against him, in the Court of Common Pleas of Huntingdon county, to April Term, 1846, No. 76. On Saturday before the term of the Huntingdon court to which this writ was returnable, some kind of negotiation was set on foot between the parties, and their respective friends, to settle Mrs. McMillan's suit against Lowry, and a prosecution which Lowry threatened against Mr. Brotherline on letters written by him and connected in some way with the same matter. It was agreed that the suit should be discontinued, and the letters in question given up to Mr. Brotherline. Mrs. McMillan signed a paper authorizing the prothonotary to enter a discontinuance in her suit. When Lowry was shown the paper and asked to sign the order, he refused at first, unless the word 'FOR

ever' was inserted in it. Mr. Brotherline inserted it on Monday, without consent of Mrs. McMillan, and Lowry then signed the order to Mr. Cresswell to give up the letters. But he went the same day to Huntingdon, and retracted his order by requesting Mr. Cresswell to hold on to the letters. Subsequently the prosecution against Mr. Brotherline was pushed to conviction in this county. It is probable that Mr. Lowry retracted his order, and refused to stand by his agreement, because he had ascertained in the mean time that Mrs. McMillan had not consented to the insertion of the word that he thought so necessary. At least this is the construction most favourable to his own character for good faith.

"Now, although this discontinuance of the writ in Huntingdon county will not, of itself, operate by way of estoppel to prevent a recovery, yet, if you believe that there was a contract between the parties, by which it was agreed that her cause of action should be for ever released, for a good consideration which was paid or performed by the defendant, then she cannot recover in this action.

"Dr. Coffey said she told him that she was satisfied: Mr. Lowry and she understood one another, though Lowry said afterwards that it was not settled. She did not say what she had got, nor whether she got anything. There is no evidence here that she did anything but sign the paper without the word 'for ever' in it. There is no evidence that assigns to her any other motive for signing it, than Lowry's agreement to give up the letters of Brotherline, and that agreement was not performed, for he refused to give up the letters that same day.

"Still, I repeat, that if you see any evidence which proves that she agreed to accept a consideration for releasing her cause of action, and that the consideration was paid to her, she cannot recover here.

"The institution of the first suit in this county, in which the writ was issued within less than ten days before the term, and to the service of which the defendant's counsel by their protest seem to have meant to make an objection, appears to have been discontinued because of a doubt about the legality of the service. Whether it was a violation of the agreement to bring that suit or not, is not important, since it was not proceeded in.

"The second objection here to a recovery is that the contract was not a binding one.

"That the defendant (Lowry), made a promise to plaintiff. that he would marry her, is proved, if anything can be proved in a

court of justice. He said it repeatedly in her presence, and mentioned it often to other witnesses when she was absent. But there must be mutual promises. If a man offers to marry a woman, or promises to do it, he is not bound to comply with it unless she agreed to accept him. It takes two to make a marriage contract, as well as any other bargain.

"Here it is proved that he paid her a long course of assiduous attentions, which she received from him; that he wrote to her in language which a man, not accepted, would hardly use; talking about the carriage he had bought, and his niece's opinion of her aunt; that he got her some articles of dress, expressly declaring, at the time, that they were for the wedding, and saying that the wedding was to take place at a particular time in October then next.

"Then again: defendant said in her presence that they were engaged—not that he had offered or promised, or that he wanted to marry her—but he said they were engaged, which implies an obligatory promise, and of course a mutual promise.

"If you believe the witnesses, the case is with the plaintiff on this point also.

"But it is said that she ought to have made an offer to marry him before the bringing of the suit.

"Where a man has a contract of marriage with a woman, and merely puts it off, and she becomes impatient, she cannot drag him into court and demand damages unless she has formally offered to perform the contract on her part, and he distinctly refuses, and so put an end to the contract, because perchance he would prefer the marriage to the suit, and he ought to have a chance to make his choice.

"But this rule is subject to some modification. If you believe, in the present case, that Mr. Lowry continued his attentions to the plaintiff down to a short time before his marriage with another woman, and then married that other without consulting the plaintiff, and so made himself unable to marry the plaintiff before the suit was brought, then she was not bound to make an offer. It would have been ridiculous to offer to marry him when he had a wife already, and the law does not require anybody to do a vain thing.

"What should be the damage? This appears to have been a long courtship. Her reluctance to marry defendant was overcome after many and strenuous efforts on his part. He succeeded, however, and kept her in the opinion that he was sincere until he

chose to let her know that he was not. It cannot be denied, that a violation of such a contract is a deep and serious injury. The plaintiff is entitled to compensation for it. How much, you are to judge."

*Defendant's Points.*—1st. That the record of the discontinuance for ever of the action, in the Court of Common Pleas of Huntingdon county, of April Term, 1846, No. 76, is a bar to a recovery by plaintiff in this suit.

2d. That the discontinuance for ever, filed in the said suit to April Term, 1846, No. 76, operates as a *retraxit*, and is a bar to any subsequent action for the same cause.

3d. That from the record of said suit, the plaintiff is presumed to have, in person, ordered a *retraxit*, or discontinuance for ever of said suit, which is a bar to plaintiff's recovery.

4th. That if the jury believe the evidence of Dr. James Coffey, plaintiff's witness, who testified that plaintiff acknowledged she was satisfied, and that all matters were settled between them, plaintiff is estopped, &c., and cannot recover in this suit.

5th. That inasmuch as there is no evidence of an express promise, on part of plaintiff, to marry the defendant, she cannot recover.

6th. That the discontinuance for ever of No. 76, April Term, 1846, is to be taken as the act of plaintiff, binding on her, and a perpetual bar to any subsequent action, especially as she has given evidence that defendant had signed an order to John Cresswell, Esq., for the letters spoken of, and that the *nolle prosequi* was proved, by Mr. Cresswell, to have been entered in the prosecution against John Brotherline, in Huntingdon county, in compliance with what she alleged to have been the understanding.

7th. That the institution of suit No. 72, July Term, 1846, in Common Pleas of Blair county, was a violation of the agreement plaintiff alleges on part of the plaintiff.

8th. That to entitle plaintiff to recover, there must be proof of mutual promises of marriage, and of an offer on part of plaintiff to marry defendant.

9th. That it being in evidence that plaintiff acknowledged she was satisfied, and that all matters were settled, after institution of the suit in Huntingdon county, and the same having been discontinued for ever, *pro ut* the record of that suit in evidence; which judgment of discontinuance for ever, or whatever it may be called, remains effectual, not reversed or opened; no violation of any agreement on part of defendant with John Brotherline, or to dis-

continue or procure to be entered *nolle prosequi*, or any prosecution for libel or other thing against the said John Brotherline, will entitle plaintiff to recover in this action, or in any way affect the operation of the said discontinuance for ever; which, from its term, operates as a *retraxit*.

The charge of the court contains all that was said on any matter of law, and the answers to the above points.

The defendant excepted to the charge of the court, and the jury having returned a verdict for plaintiff of $1,000, he sued out this writ of error.

The defendant assigned seventeen errors; but the main question argued here, and the only one pressed, was, whether the paper writing addressed by the plaintiff to the prothonotary, and by him filed of record on the 1st of June, 1846, and which authorized and required him to *discontinue for ever* the suit to April Term, 1846, No. 76, was a *retraxit* and bar to a subsequent suit for the same cause of action.

*T. Banks* and *Wilson*, for the plaintiff in error, cited Hoffman *v.* Coster, 2 Wh. R. 453; 1 Watts, 425, 427; 1 W. & S. 433; 7 Bouv. Bac. Abr. 215; 2 Bouv. Dic. 559; 10 Watts, 13; 1 Watts, 425; 2 Wh. R. 469.

*Cline* and *Fisher*, contrà, cited 7 S. & R. 368; 1 Penn. Rep. 134; 2 Rawle, 454; 10 Johns. R. 53; and 2 Bouv. Bac. Abr. 215.

*May* 29.   COULTER, J.—Seventeen errors are assigned for the purpose of overturning the judgment below; but the counsel for plaintiff in error, with a laudable economy of the time of this court, declined to press upon us any of them except the twelfth. We shall therefore dismiss all the rest, with this observation, that neither separately nor collectively do they possess weight or substance.

The twelfth regards the instruction prayed for by the counsel, to wit: that the discontinuance and withdrawal of the suit between the same parties, No. 76, April Term, 1846, ought to be considered as a *retraxit*, and a bar to this suit; and that the docket entry and paper filed in that case, cannot be contradicted or explained by parol testimony. The refusal of the court to give this instruction is assigned as the twelfth error. If we regard the record in that case merely as a discontinuance (and the paper filed is to be considered merely as an agreement to suffer a nonsuit), then it affords no bar to the present suit.

A technical *retraxit* has been, and is, almost unknown in the practice of this state. It is where a plaintiff cometh personally into court where his action is brought, and saith he will not proceed in it; and this is a bar to that action for ever : 2 Jacob's Law Dic. A *retraxit* must always be in person; if it is by attorney it is error: 8 Rep. 58; 3 Salkeld, 245. It cannot be before a declaration, for before a declaration it is only a nonsuit: 3 Leonard, 47; 2 Silby's Abr. 476. In the case in hand, the plaintiff did not go personally into court, and there was no declaration filed. It cannot, therefore, according to the authorities, be considered as a *retraxit;* for although the words, "withdraw for ever," are used in the paper filed, we cannot suppose that the parties had in their mind a legal technical rule, obliterated where it is not worn out, even in the professional mind, merely from the affinity of the word *withdraw,* to the word *retaxit.*

Withdraw a suit, is an expression used in common parlance, as equivalent with discontinuance. In addition, as no declaration was filed, it could bar nothing, the cause of action being unknown on the record, and this shows the good sense of the doctrine above established : that a *retraxit* did not exist before declaration filed. The record of suit No. 76, April Term, 1846, was therefore no bar to this suit as a *retraxit.*

But it might have been accompanied with an agreement, which, if made upon a good consideration, would have given it the character of an *estoppel,* or perhaps a release of this action.

It is in evidence that Eliza McMillan signed the paper dated 11th April, 1846, directed to the prothonotary, which paper was filed some time afterwards. There is not the slightest evidence of any consideration being paid the plaintiff, no evidence of any inducement which she had to make the agreement and settlement, but a corresponding agreement on the part of Lowry, to give up certain letters written by Mrs. McMillan's friend, upon which a prosecution for libel was threatened. Lowry afterwards refused to give up the letters, but the paper was filed, not by Mrs. McMillan or her agent. And the paper was altered by the insertion of the words "for ever" before it was filed, without the plaintiff's knowledge or consent.

The friend of Mrs. McMillan was afterwards indicted, as it appears, and convicted on the letters, and she brought this action. Thus both parties threw themselves back on their original position. This evidence explains the record. A record is entitled to great sanctity in the law. But then it must be an honest record. It is

in vain to talk of the danger of altering or explaining a record by parol: everything imbued with fraud must give way before credible sworn testimony.

On every ground taken, we are of opinion that the record was simply a discontinuance or nonsuit, with no greater or higher import or effect, and that consequently it was neither a bar nor estoppel to this suit.

Judgment affirmed.