Points decided.

(February 28, 1890.)

# HAVIRD v. COUNTY COMMISSIONERS OF BOISE COUNTY.

## [24 Pac. 542.]

MANDAMUS—IRREGULARITY OF RECORD—RES ADJUDICATA—FRAUD— ACT UNCONSTITUTIONAL—FEES—SALARY—OFFICER DE FACTO— OFFICER DE JURE.

MANDAMUS—IRREGULARITY OF RECORD.—At the January term, 1889, in a suit between the parties interested in this proceeding, the court rendered a decision that the act under which the case was tried was unconstitutional and void, and reversed the court below, afterward amending the record and dismissing the action. The next day two of the justices ordered the record amended by restoring the word "reversed" for "dismissed" (the latter amendment alleged to have been made out of term time); *remittitur* was sent to court below as cause being reversed by court. Held, that the *remittitur* should have been to dismiss the case, and not being so, Havird had no speedy and adequate remedy at law, and *mandamus* was the proper proceeding.

RES ADJUDICATA—FRAUD.—In answer to Havird's application for a writ of mandate, the intervener, Gorman, avers the action is still pending in the district court, and this court is without authority to issue the writ. Held, that the greater portion of the declarations in the answer are *res adjudicata,* and will not be considered by the court. Held, further, that a judicial record cannot be contradicted by parol evidence, although it is elementary that no instrument, record or document is valid or can exist in the face of fraud, corruption or dishonesty, but in this proceeding the applicant is not in a position to assail the record.

FEES—SALARY—DE FACTO OFFICER—DE JURE OFFICER.—But for the fact that the statute (Rev. Stats., sec. 380) preserves the salary for the *de jure* officer, and forbids the issuance of a warrant pending the suit, the *de facto* officer would be entitled to both the salary and fees of the office, and if declared to belong to another, would be required to pay the same to the one found entitled, but even then the *de facto* officer would be entitled to his necessary expenses incurred in earning the fees and emoluments received.

Huston & Gray, for C. C. Havird.

George Ainslie, for John Gorman.

H. W. Dunton, for Boise County.

No briefs filed.

SWEET, J.—Cary C. Havird was a candidate for sheriff at the regular election in Boise county held in November, 1886. He was declared elected to said office by the canvassing board of said county, and in due time received a certificate accordingly. Within the time prescribed by law, John Gorman, the opposing candidate for sheriff at said election, commenced a proceeding under an act of the territorial legislative assembly approved January 30, 1885, in which he contested the right and title of said Havird to said office. The cause was heard by the district judge in and for said county, as by said act provided, and a judgment was rendered in favor of the applicant herein. John Gorman, the intervener in this action, moved for a new trial, which motion was by said judge overruled; and from the order overruling said motion said Gorman appealed to the supreme court of the territory. The cause came on for hearing before said court at its January, 1889, term, and on the eleventh day of March, 1889, the opinion of the court was rendered by Mr. Justice Berry; the court, by said opinion, declaring the act under which the trial before the judge in said Boise county was held to be unconstitutional and void, and by reason thereof caused to be entered in the records of this court an order reversing the judgment rendered by the judge of said district. On the eighteenth day of the same month the judgment of the court as rendered on the eleventh was amended on motion of counsel for the respondent, and, by this amended judgment, it was ordered that the action be dismissed; the substance of said order being that the word "dismissed" was substituted for the word "reversed." On the following day an entry appears in the record setting forth that Chief Justice Weir and Justice Logan, two of the members of said court, having reconsidered the action of the court as entered of March 18th, ordered that the motion to amend the original entry of March 11th be denied, and that the word "reversed" should stand as the judgment of the court in place of the word "dismissed." .

The matter comes up at this time on an application by Cary C. Havird for a writ of mandate commanding the county commissioners of said Boise county to order the issuing of warrants, payable to the order of said Havird, as compensation for services rendered as aforesaid, in the form of salary, and for fees and expenses allowed by law. The commissioners answer the order to show cause by stating that the title to the office is involved in an action now pending in the district court in and for that county, and that, under section 380 of the statute, the said board is prohibited from ordering any warrants drawn in payment of salary during the pendency of an action over the title of the office. John Gorman, the intervener avers that the action is still pending in the court below, and that, while such action is pending, he is an interested party, and invokes section 380 of the statute to show that this court is without authority to issue said writ. The allegations contained in the pleadings cover a much wider range of investigation. Indeed, under the complaint and answer, it might be possible to try the entire case, as it is averred on the one hand that one party was elected, and, on the other hand, the election of the first party is denied, and the election of the second party averred. A greater portion of these declarations *pro* and *con* are *res adjudicata,* and will not be considered by this court. The only question here presented is the *status* of the case after the decision rendered by the supreme court at its last session.

· What purports to be the record of the court, particularly the entry of March 19, 1889, is not regular upon its face, and in terms states that the action therein taken is the result of a conclusion reached by two of the members of the court; but it is not declared to be the action of the court by the court, and, from its very appearance, would perhaps suggest that any person interested would be justified in seeking to investigate its character. The intervener, as well as the board of county commissioners, in answering plaintiff's application in the matter now at bar, rely upon the entry made on March 19th, and upon the *remittitur* sent down by the clerk of this court to the court below, as justifying the position taken by them, which is that the action over the title to said office is still pend-·

ing in said Boise county. Unquestionably the *remittitur* so
states. It is before us; and, although the entry of March 19th
does not declare that the conclusion therein mentioned was
reached by the court, the *remittitur* was to the effect that such
was the order, not of two of the justices, but of the court.
Counsel for plaintiff offer to show that the entry of March 19th
is not a record of this court. They contend that that entry
was made out of term time, after the court had adjourned,
upon the order, not of the court, but of two of its individual
members. If this statement were true, it would not only not
be a record, but it would be a false entry in a record, and must
result in very serious consequences to those who made it.

The plaintiff introduced those entries in the record appear-
ing as of March 11th and March 18th, and there rested. When
the intervener and defendant offer to introduce the entry of
March 19th, plaintiff objects, and offers to prove by parol evi-
dence the irregularities above set forth. Defendant and inter-
vener contend that the record of the court is conclusive, and
that it cannot be assailed, and numerous authorities are cited
in support of the proposition. On general principles, this
court will not question the doctrine. It is a fact, however,
that no instrument is sacred if in any manner tainted with
fraud. A judicial record cannot be assailed, but this is a
different proposition from denying the existence or validity of
a record. In other words, the record, once established, is un-
assailable, and, as the honest record of the court, is absolutely
unquestionable. In *Lowry v. McMillan,* 8 Pa. St. 157, 49
Am. Dec. 503, the court uses this language: "A record is en-
titled to great sanctity in the law, but then it must be an
honest record. It is in vain to talk of the danger of altering
or explaining a record by parol. Everything imbued with
fraud must give way before credible sworn testimony." Note
5, page 170, of Bigelow on Fraud, reiterates this doctrine, and
there distinctly states that the question of fraud may be raised
so long as it was not a question involved in the trial of the
cause; in other words, if it in any manner tampered with the
rights of the parties, the jurisdiction of the court, or the
correctness of the proceeding, at such time or in such manner
as that the interested party was not able to be heard to pro-

tect himself.   The general principle, therefore, is that a judicial record cannot be contradicted by parol evidence.   It is an equally well-known, indeed an elementary, principle, that no instrument, no record, no document, is valid, or can exist, in the face of fraud, corruption or dishonesty.   But, in the matter at bar, is the applicant in position to assail the record?   We think not.   Without attempting to specify how such a record may be assailed, and in what form the allegations should be made to admit of the introduction of parol evidence to contradict the record, it is sufficient to say that to entitle the plaintiff to offer parol evidence in proof of so serious a charge, and of a fraud so serious in its character, and so far-reaching in its effect, the allegation must be fully and fairly made, and the issue clearly and positively tendered.   In this case, and under the allegations of the complaint, the entry of the 19th of March cannot be assailed.

This court is called upon, then, to settle the *status* of this case upon all of its records here, the effect of the action of this court a year ago, and the rights of the parties under it.   The opinion of the court as rendered last March, duly filed on the 11th of said month, and these various entries, will be used to guide us in reaching a conclusion in the matter at bar.

The opinion declares that the act of the legislature under which the contested election case was tried was unconstitutional and void.   To say that the act is unconstitutional and void, and that the proceedings under it may be valid, is an absurdity too patent to be discussed.   This court reversed the court below. Reversed what?· Reversed its decision?   No.   It simply declared that there was nothing to decide; that the act under which they were proceeding was in itself void, and, as a matter of course, the proceedings themselves could not possess more validity than the act under which they proceeded.   Then, why should it be sent back?   Sent back for another trial under an unconstitutional act?   But this discussion may be ended by declaring that when the supreme court held the act of January 30, 1885, to be null and void, the case of *Gorman v. Havird* no longer existed, and as a legal entity, so far as its having any

possible effect upon either of the parties to the suit is concerned, never had existed.

We now pass to the record. We find an entry on the 11th of March declaring that the judgment of the lower court is reversed; another, on the 18th, to the effect that it should be dismissed; and on the 19th two of the judges, personally, have reconsidered what the court did on the 18th, and restored the action of the 11th, or at least attempted so to do. Perhaps it is as well to pass this record with this statement; for, whether it be a true record or not, it is entitled to but little consideration, and the more it is studied the more doubt it creates as to how the opinions of the court were decided, and how that particular decision was announced. It amounts to but a quibble, at best. The one entry declares that the court below shall proceed as it may deem best; and the other, that the action shall be dismissed. The opinion of this court was certified down to the court below; and no matter what the court below may have thought, there was but one thing for it to do, and that was to dismiss the action. And this brings us down to the next point in the matter, or to the next quibble presented—namely, whether this court should send the case back to be dismissed by the judge of the district, or whether this court should order it dismissed. It is a distinction without a difference. When the supreme court thus clearly indicated the invalidity of the law, and the inevitable *status* of the case under it, the applicant should have had his money, and the expense of this litigation ended. The case having been returned, however, we find that it has been continued from time to time; and the plaintiff is still carrying on the expense of conducting the executive business of the county without pay, and, judging of the future by the past, without prospect of ever having any, or without any probability of ever reaching a settlement of the legal questions involved.

Let there be no misunderstanding about the conclusion reached this time. The case ought to have been dismissed. It was the intention of the supreme court a year ago that it should be dismissed; and the retention of the case in court, and its continuance, did not, and does not, afford the plaintiff not only a speedy and adequate remedy at law, but affords him no rem-

edy at all.   Under such a condition of affairs, he was authorized
to appear before this court, and declare that he had no speedy
and adequate remedy at law, and invoke the extraordinary
powers given this court to secure to him the rights and privi-
leges guaranteed him by law.   Let it not be understood that
the intervener or the commissioners are in any manner at fault.
They were bound by the *remittitur* sent down to them; and,
unless the judge saw fit to act in accordance with the implied
order of the court, these parties had no alternative but to await
the remedy or the relief that time would bring.   The inter-
vener, Gorman, is but exercising the right of a citizen in con-
testing this election; and, until the act under which he was
proceeding was declared unconstitutional and void, he was pur-
suing methods prescribed by law.   It is no wonder that, under
the conflicting entries in the records of this court, and the *re-
mittitur* sent down, both counsel and client were at a loss to
know what steps to take, or in what manner to proceed.

We now pass to the question of fees and salary claimed by
plaintiff, and the distinction, if any there be, as to the amount
due on account of salary, and the amount due by law, and al-
lowed by the board, for expenses and fees.   In the absence of
a statute on the subject, plaintiff would be entitled to receive
both the salary and the fees pertaining to the office of sheriff,
for the reason that, being in possession of the certificate de-
claring him duly elected, and having qualified as provided by
law, he would be presumed to be entitled to all of the fees and
emoluments of the office; and, if the title to the fees were sub-
sequently declared to belong to another, the person subsequently
declared elected would be entitled to sue the *de facto* officer for
all fees and emoluments received by him during the time he
was in office.   Even then, however, the *de facto* officer would be
entitled to receive the necessary expenses incurred by him in
earning the fees and emoluments received.   These principles
are laid down in the case of *Mayfield v. Moore,* 53 Ill. 428,
5 Am. Rep. 52, and *Auditor v. Benoit,* 20 Mich. 176, 4 Am.
Rep. 382.   Our statute, by section 380 of the code, preserves the
salary to which the *de jure* officer is entitled by forbidding the
issuance of the warrant during the pendency of the suit.   As
before stated, were it not for this decision, plaintiff would be

entitled to receive the salary attached to the office of sheriff of his county by virtue of his *prima facie* right to exercise the duties of the office, and, naturally, to receive the compensation therefor.    But we do not think that this section applies to that portion of the sheriff's bill or bills which have been allowed by the board on account of his expenses.    For instance, plaintiff was allowed by the board of commissioners, for boarding prisoners, $692.25; for jailer's fees, $1,302; for transportation of prisoners, $156.15; and other items of like character.    He is entitled to this money even if the intervener were finally to recover the title of the office.    It is due for money expended; and Mr. Gorman, never having expended the money, would not be entitled to it, either from the county or from plaintiff.    In other words, the plaintiff, in possession of his certificate of election, and all other *indicia* of office, made necessary expenditures out of his own pocket on behalf of the county.    There can be no question of his right to receive that money, and it should have been paid to him long ago.    It was proper enough to withhold the $2,978 on account of salary during the pendency of the action inaugurated to test the title of the office; but, when that action was disposed of by the highest court in the territory, there was no longer any reason for withholding the payment of the salary.    It is true that, under the *remittitur* sent down from this court, this action may seem like a hardship against Gorman.    It is, unquestionably, an unfortunate condition of affairs for both; for, as will be seen by glancing at the history of this case, not only has the plaintiff been denied a speedy and adequate remedy, but the intervener seems to be without remedy at all.    The condition of the record, the continuance of the case, and the numerous awkward circumstances with which the entire transaction is surrounded, seem to have been reached without the co-operation, or even knowledge, of the intervener or his counsel, while it is perfectly plain that the county commissioners would not know what to do, and could be safe only in doing nothing.

In accordance with the decision heretofore rendered, the judgment of the court is that the action which by the *remittitur* before us appears to be now pending in the lower court should be dismissed, and that a writ of mandate forthwith issue, under

the seal of the clerk of this court, directing the defendants, the county commissioners of said Boise county, to order the issuing of a warrant or warrants, in the name of plaintiff herein, for the amounts heretofore allowed by said board during the time specified on account of fees and expenses, and that, immediately upon the dismissal of said action by said district court, a writ of mandate shall issue, under the seal of the clerk of this court, commanding said commissioners to order the issuing of a warrant or warrants, in the name of plaintiff herein, for the amount due him as salary for the time specified, and that a copy hereof be certified to said district court.

Beatty, C. J., and Berry, J., concurring.

ON APPLICATION FOR LEAVE TO APPEAL TO THE SUPREME COURT
OF THE UNITED STATES.

A writ of mandate is given or withheld in the sound discretion of the court, but the exercise of this discretion is subject to review. In the matter of *Havird v. County Commissoners* (Gorman, intervener), the court ordered the issuing of the writ. The intervener has applied for permission to appeal to the supreme court of the United States. The appeal is not so much desired on the ground of questioning the exercise of discretion by this court as for the purpose of reviewing the decision rendered by the court a year ago upon the constitutionality of the act under which the case was tried. The writ was granted in the matter at bar by virtue of the decision rendered a year ago, and the intervener declares that that decision was wrong, and expects the supreme court of the United States to so hold. We are of the opinion that when this matter is presented to the supreme court of the United States, it will simply inquire as to whether this court abused its discretion in ordering the writ, but will refuse to review the decision of a year ago upon the constitutionality of the act, and that the appeal would, therefore, be dismissed. We are also of the opinion that, if the supreme court of the United States did review the decision of a year since, and reverse the judgment of the supreme court of this territory as to the constitutionality of the act, and by reason thereof a new trial was had, and Gorman should recover

the title to the office in question, still Havird would be entitled to his fees and expenses. As the *de facto* officer, and in possession of all the *indicia* of office, we do not entertain the slightest doubt as to Havird's rights in this matter, and that Gorman's action against Havird must be for the profits only. But the intervener contends that we are wrong, and asks that we grant him an appeal to the supreme court of the United States; and we are not disposed to deny it. If Havird were a mere usurper of the office, he would not then be entitled to receive anything. His right, however, to receive his expenses as a *de facto* officer shows clearly the line drawn between a mere usurper and a person in possession of a certificate duly certifying his election. We feel that, in granting this appeal, we are trespassing seriously upon the rights of Havird to receive forthwith the money which he has expended in the interests of the county, and which, in any event, he is entitled to recover. Perhaps the appeal ought not to be granted, under such circumstances. Still, we do not feel like refusing to any petitioner at the bar the privilege of being heard by the highest court in the land, if, by any construction of the statute, it may be held that he is entitled to the writ. It is ordered, therefore, that the appeal may be had.