# GENERAL ELECTRIC CO. *et al.* v. SAPULPA & I. RY. CO. *et al.*

No. 6462. Opinion Filed November 23, 1915.

(153 Pac. 189.)

1. **APPEAL AND ERROR—Dismissal—Want of Necessary Parties.** Where an appeal is prosecuted by certain defendants from an order overruling and denying a motion to vacate and set aside a journal entry of judgment which purported to adjudicate the issues joined by the answers of said defendants in favor of the plaintiff, but it is established that no trial in fact was had, and the purported decree is therefore without legal force and effect, such appeal will not be dismissed on the ground that all the parties to the action in the trial court are not made parties to the appeal; it not appearing, other than by the journal entry, that the omitted parties have or claim any interest in the subject-matter of the suit, but that they were made parties by the plaintiff only for the purpose of setting up any right, title, or interest which they, or either of them, might have in and to the property, the subject of the suit.

2. **JUDGMENT—Rendition—Issues Undisposed of.** The purported judgment being a nullity, the rights of all parties to it remain unaffected by it, when once the invalidity **in toto** is determined.

3. **PLEADING—"Issues."** Issues arise on the pleadings, where a fact or conclusion of law is maintained by one party and controverted by the other. Such issues are of two kinds: (1) Of law; and (2) of fact. Issues, either of law or fact, are determined by a trial by the authority, in the manner and according to the forms and usages, of law.

4. **JUDGMENT—Rendition—Ground for Reversal—Refusal to Set Aside Judgment.** A judgment attempted to be rendered in behalf of a party without a trial, whereby the substantial rights of parties to a suit are adversely determined, at a time when the issues are not made up, and when there are on file the answers of those so adversely determined, in which material issue of fact are joined with such party, should be vacated and set aside on motion of those so affected, when filed in the same proceedings immediately after notice of such purported judgment is obtained; and to refuse so to do constitutes reversible error. Both the signing of such decree and the subsequent denial of relief therefrom present error of the most flagrant type.

5.    **APPEAL AND ERROR—Record—Verity.** The record filed for the purpose of appeal imports absolute verity. It is the sole, conclusive, and unimpeachable evidence of the proceedings in the trial court. If incomplete or incorrect, amendment or correction must be sought by proper proceedings.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by the Fidelity Trust Company of Kansas City, Mo., as trustee, against the Sapulpa & Interurban Railway Company and others. Judgment was rendered overruling motion of the General Electric Company and another to vacate and set aside a purported decree for the Fidelity Trust Company, as trustee, against the General Electric Company and others, defendants, and movants bring error. Reversed and remanded with directions to sustain motion.

*S. P. Freeling,* Atty. Gen., and *McDougal & Lytle,* for the State.

*McDougal & Lytle,* for plaintiff in error General Electric Co.

*R. B. Thompson (Asp, Snyder, Owen & Lybrand,* of counsel), for defendants in error Fidelity Trust Co. and St. Louis Union Trust Co.

SHARP, J.   On the 11th day of September, 1912, there was filed in the district court of Creek county an action by one E. C. Wallace against the Sapulpa & Interurban Railway Company, numbered 2621 on the docket of said court, on account of an indebtedness owing by the latter to the former, and in chambers, on the same day, on the application of said plaintiff, the district judge of said court appointed R. V. Miller, of Sapulpa, receiver of all and singular the property and assets of said railway

company within the state. On the 16th day of October following, a default judgment was rendered in favor of plaintiff. On the 15th day of April, 1913, the Fidelity Trust Company, of Kansas City, Mo., as trustee, filed in the district court of said county its petition, naming as defendants the Sapulpa & Interurban Railway Company, R. V. Miller, receiver, St. Louis Union Trust Company, as trustee, of St. Louis, Mo., General Electric Company, S. E. Carter, and numerous others, said action being numbered 2959. Plaintiff's petition alleged: That prior to and on the 1st day of February, 1908, the defendant Sapulpa & Interurban Railway Company had partially constructed and was operating a line of street railway in the city of Sapulpa, and was engaged in constructing and building said line of street railway, and the interurban extension thereof from said city to the town of Kiefer in Creek county. That on said day said railway company executed its 50 bonds, each for the sum of $1,000, by the terms of which said defendant promised to pay the holder thereof the sum of $1,000, 10 years from date, interest thereon to be payable at the rate of 6 per cent. on the 1st days of February and August of each year, from date thereof, which interest installments were evidenced by coupons attached to each of said bonds. That in order to secure the payment of the principal and interest to become due on said bonds, according to their terms, at the same time and place, and as a part of the same transaction and contract, said railway company duly executed and delivered to the plaintiff, as trustee, a certain deed of trust, whereby it conveyed to plaintiff, as such trustee, all of said defendant's franchises, right of way, railroad equipment, and other property, consisting of four certain lots in the city of Sapulpa, its municipal

franchise from said city, and all its right of way, roadbed, and tracks in said city and in Creek county; also all side tracks, switches, depots, depot grounds, rolling stock, power plant, pole lines and wire, and all equipment used in connection with its line of electric railway in said city and county. That thereafter the bonds of said company were duly made, executed, and delivered, and certified to by trustee, as provided for in said deed of trust. That afterward, for a valuable and valid consideration, the defendant St. Louis Union Trust Company became the lawful holder of all of said 50 bonds, and the interest coupons attached thereto, and had been ever since, and was on the date of the institution of said action, the lawful holder thereof. The petition alleged that the covenants contained in said deed of trust had been broken; that the railway company had failed to pay its maturing interest coupons, and was in arrears for taxes for the years 1908, 1909, 1910, 1911, and 1912, in the sum of $11,039.62. The petition contained many other allegations not necessary here to recite, and concluded with a prayer asking that the railway company be decreed to pay plaintiff, as trustee, the principal sum of $50,000, due on said bonds, together with interest thereon at the rate of 6 per cent. per annum from the 1st day of August, 1909; that said deed of trust be decreed to be a first lien upon all of the property, real, personal, and mixed, rights, franchises, lands, titles and railway described in said deed of trust, and then owned or subsequently acquired by said railway company, prior and superior to any other liens whatsoever; that the court allow the plaintiff a just and reasonable compensation for its services as trustee; that plaintiff's attorneys be allowed a reasonable fee for their services in said foreclosure proceedings; and that the rights, interests, and claims

of the other defendants be ascertained and adjudged, and be decreed junior, inferior and wholly subject to the rights and lien of plaintiff, as trustee, under said deed of trust; and that said defendant railway company and all other defendants impleaded therein, and all other persons whomsoever claiming through, by, or under them, or any of them, be forever barred and foreclosed of and from all right, title, interest, estate, equity of redemption, and claim of, in and to said franchises and property real, personal, and mixed, and every part thereof, described in said deed of trust. On the 11th day of July, 1913, the defendant railway company, by its receiver, filed its answer, which consisted of a general denial, and a specific denial that said defendant was indebted to the plaintiff in the sum of $50,000, or any other sum, and further alleged that the railway company was the owner of property acquired after the execution of the deed of trust, and which was not included within its terms, and specifically charged that the only property included in the deed of trust was that owned by the railway company at the time of the execution of said deed of trust, and none other. On the same day, plaintiff trust company filed its motion for judgment on the pleadings against defendant railway company. This motion does not appear to have ever been acted upon.

On the 12th day of June, 1913, there was filed in said latter action the answer and cross-petition of the defendant General Electric Company. Said answer consists of a general denial, as well as certain specific denials, and sets up the following judgments by reason of which it claimed a first and paramount lien on all the property of said railway company: (1) A judgment in favor of said electric company against said railway company,

rendered by the District Court of the United States for the Eastern District of Oklahoma, on the 1st day of March, 1913, in the sum of $38,405; (2) a second judgment in the United States District Court for the Eastern District of Oklahoma. rendered on the 14th day of April, 1913, in favor of said electric company and against said railway company, in the sum of $7,341.42; (3) a judgment rendered in the district court of Creek county, March 21, 1913, in favor of said electric company and against said railway company, in the sum of $1,000. On August 7th following the defendant S. E. Carter filed in said action an answer in which it was alleged: That on the 7th day of July, 1910, he loaned to the said railway company the sum of $25,000, which loan was evidenced by two notes of even date therewith, one in the sum of $15,000, the other in the sum of $10,000, each maturing 12 months from date, the proceeds of which loan were by said railway company used in the extension of its line of railroad. That at the time of the making of said loan it was represented to said Carter that it was the purpose and intention of said railway company to issue first mortgage bonds in the sum of $2,000,000, $275,000 of which would become immediately available for the purpose of paying and securing the company's present obligations, including the Carter loan. That thereafter a deed of trust, duly executed by said railway company and by the St. Louis Union Trust Company, as trustee, was placed of record in the office of the register of deeds of Creek county. That in accordance with the terms and conditions of said deed of trust $275,000 of first mortgage bonds were properly executed by the officers of the railway company, and forwarded to the trustee, the St. Louis Union Trust Company, with instructions to certify the same.

That each and every step and undertaking necessary to the issue of said bonds was complied with, except only that the said St. Louis Union Trust Company wrongfully failed and refused to certify said bonds as requested by the railway company. The answer charged that said defendant was in equity entitled to a lien on all of the property of the railway company, and asked that the court ascertain upon what property the plaintiff trust company, as trustee, was entitled to a lien by virtue of its deed of trust of February 1, 1908, and after the same was ascertained that the court render judgment for the amount due, and declare the same to be a lien upon the property described in said answer, and that upon the sale of said property said defendant be decreed to have an equitable lien upon the proceeds of said sale, subject only to the proper claim of the plaintiff, and for the payment of taxes due. On October 7, 1913, the defendant General Electric Company filed its reply to the answer and cross-petition of defendant Carter. On the 14th day of October following, the defendant State of Oklahoma *ex rel.* J. D. Lankford, Bank Commissioner, filed its answer and reply, both to the petition of the plaintiff and the answer and cross-petition of the defendant Carter, in which it put in issue each and every material allegation contained in both said petition and answer and cross-petition. On the same day the defendant State of Oklahoma filed its plea of intervention in said last-numbered action, in which it asked judgment against said railway company in the sum of $117,619.11, with interest and attorney fees, and that as intervener it "be given and shown its due priority against any of the assets of said Sapulpa & Interurban Railway Company"; said sum being the amount alleged to be due upon certain promissory notes made by the rail-

way company to the Farmers & Merchants Bank of Sapulpa, the assets of which bank, by reason of its alleged insolvency, were later taken over by the State Bank Commissioner to reimburse the depositors' guaranty fund. On the 25th day of October following, the plaintiff filed its reply to the answers of the General Electric Company, the railway company, and all other answering defendants, by which it put in issue the material allegations of said answers and pleas. On the 27th of October, 1913, the answer of the defendant Union Trust Company was filed.

On October 30, 1913, trial was had on the plea in intervention of the defendant S. E. Carter, and, after said defendant had rested his case, counsel for plaintiff asked permission to amend its petition by attaching thereto a supplementary deed of trust, said to have been executed by the railway company on the 1st day of December, 1908, and that it be permitted to further amend its original petition by attaching thereto a deed of trust, said to have been executed by the railway company on December 28, 1911. To the proposed amendment counsel for the state and the General Electric Company objected, claimed surprise, and asked time to plead. The amendment was permitted to be made, and said defendants by the court given until the following day at 1:30 o'clock "to get over their surprise in this matter." No amendments, however, appear to have been made to the original petition. In the record in case No. 6436, *S. E. Carter, Plaintiff in Error, v. Sapulpa & Interurban Railway Co. et al., post*, 153 Pac 853, in this court, there is an instrument that purports to be a deed of trust by the railway company to the Fidelity Trust Company, dated December 1, 1908, and which includes not only all of the property owned by said railway

company on said date, but all that which might thereafter be constructed or acquired by it. There is no proof that this instrument was ever delivered, and it does not appear ever to have been filed or recorded. In the same record is found a supplemental deed of trust, which purports to have been given by said railway company to said trust company, and is dated December 28, 1911, and which instrument further purports to have been recorded in the office of register of deeds of Creek county on February 1, 1912. Notwithstanding no amendment appears to have been made to plaintiff's petition, although permitted to be done, the defendants General Electric Company and State of Oklahoma, on October 31, 1913, filed their answer to the amendment to the petition, and on the same day the General Electric Company filed an amendment to the cross-petition, and asked that the judgment theretofore rendered in the United States District Court on April 14, 1913, be declared a first and paramount lien upon all the property of the railway company. On November 11, 1913, in open court, the plaintiff trust company orally replied, denying the allegations of new matter contained in the answers and cross-petitions of the defendants General Electric Company and the State of Oklahoma. On February 7th following, plaintiff filed its motion for leave to correct and amend its petition by correctly describing the property, which motion was on the same day heard and granted. On the 2d day of March, 1914, there was filed in the office of the clerk of the district court of Creek county a purported decree, signed by the district judge, which, with the schedule of the property included in the decree, consists of 45 typewritten pages. The decree purports on its face to have been made on October 31. 1913, and recites that by agreement of the plaintiff and all

the represented and appearing defendants, both causes Nos. 2621 and 2959 were consolidated under the style and number of the latter cause. It recites, further, that the consolidated causes came regularly on for trial; the appearances of the plaintiff and the respective defendants and interveners; the submission of all questions to the court without the intervention of a jury, and that, in consideration of the pleadings and evidence of witnesses who were sworn and testified in open court, the court made certain findings of fact, to which, on account of their length, we shall refer but briefly.

Among other things, the court found: That prior to and on the 1st day of December, 1908, the railway company had partially constructed and was engaged in operating a street railway in the city of Sapulpa, and was at said time also engaged in constructing and completing a line of railway in said city, and an interurban extension thereof from Sapulpa to Kiefer, in Creek county. That for the purpose of raising funds sufficient to complete and further equip said line of street railway, and said interurban extension thereof, bonds in the sum of $50,000 were issued, secured by a deed of trust of even date therewith. That said deed of trust was a valid, subsisting, and paramount lien upon all of the property described, both in the decree and in the attached schedule, consisting of "* * * all of the property conveyed by said deed of trust or mortgage, or passing thereunder, or subject to the lien thereof, and upon all the property acquired, constructed, improved or augmented with or out of the proceeds of the sale of said bonds, or from the income or surplus earnings now in the hands of the receiver, prior and paramount to the rights and interests of all other parties to this consolidated cause." That the

trustee had rendered actual and necessary services of
the value of $250, and that a just compensation to be
paid the attorneys representing the trustee for their
services rendered and to be rendered would be $7,000.
That the rights, interests, and claims of the interveners,
General Electric Company and State of Oklahoma, were
junior, inferior, and subject to the deed of trust and lien
thereof held by the Fidel:ty Trust Company, but that
the rights, interests, claims, and privileges, if any, of said'
several defendants and interveners, as between and among
themselves, should be reserved for further ascertainment
and adjudication by the court. That there was due the
St. Louis Union Trust Company, the holder of said bonds
and interest coupons, the sum of $64,190; the trustee, the
sum of $250; the attorneys for the trustee the sum of
$7,000. It was ordered that, if, the above sums were not
paid within ten days from the date of entry of decree,
then the receiver should proceed to sell at public auction
to the highest bidder all of the rights, franchises, and
other properties of the said railway company.

On the 6th day of April following there was filed
in the office of the clerk of the district court of Creek
county a second decree, purporting to have been made
and entered on the 31st day of October, 1913, in said
consolidated case, denying equitable relief to the defend-
ant S. E. Carter on his answer and cross-petition, and
by which it was decreed that said Carter had no rights
other than that of a "common judgment creditor" under
the state statute. On March 14th thereafter the defend-
ants General Electric Company and State of Oklahoma
filed in said action their motion, duly verified, charging:
That, while their claims had previously been allowed at a
former hearing, there remained undeterm:ned by and be-

tween the plaintiff and said defendants the question as
to whether or not the deed of trust held by the Fidelity
Trust Company covered the after-acquired property of
the railway company, consisting of certain trackage and
equipments between Sapulpa and Kiefer, and which issue
was set down for hearing on the 19th day of February,
1914, but had not been disposed of by reason of the ab-
sence of plaintiff's attorney; that in total disregard of
the rights of defendants, and without notice or knowledge
on their part, plaintiff had prepared and submitted to
the court a journal entry in said cause, purporting to
dispose of practically all matters in controversy in favor
of plaintiff; and defendants asked that the journal entry,
so prepared, and inadvertently signed by the court, be set
aside, vacated, and held for naught. On May 1, 1914, the
United States Fidelity & Guaranty Company, intervener,
filed its motion to strike the journal entry of October 31,
1913, from the files, and to vacate and set aside the pur-
ported decree, and charging, *inter alia,* that in fact no such
decree was ever rendered. On May 4, 1914, the motions of
the respective parties coming on to be heard, certain rec-
ords were introduced for the purpose of proving that no
such judgment as recited in the decree had ever been
rendered, and that the cause had not been closed on the
day that the purported decree was signed, and had never
been closed; that there was no evidence taken with refer-
ence to the reasonableness of the attorney fees allowed;
and that on the 11th day of November, 1913, the plaintiff
orally replied to the allegations of new matter contained
in the answer and cross-petition of the defendants. L. O.
Lytle was then sworn as a witness and testified:  That
he was attorney for the Electric Company and State of
Oklahoma in cause No. 2959, and was present on the date

in October when the cause came on to be heard, and during the entire proceedings of the court; that the judgment contained in the journal entry filed on March 2, 1914, was not announced in open court by the judge on October 31, 1913, to the witness' knowledge; that no journal entry had ever been presented to him, and he had no knowledge of the subsequent signing of said journal entry, until a copy thereof was presented him on or about the 12th day of March, 1914, by one Bates B. Burnett; that the issue joined by the pleadings as to the right of the plaintiff to a first and paramount lien on the after-acquired property of the railway company had never been tried or determined by the court. C. F. McMullen also testified, on behalf of movants, that his law firm represented several judgment creditors in cause No. 2959, and that he was present on October 31, 1913, when the trial was had; that to the best of his recollection the only matter heard or determined by the court on that day was the interplea of S. E. Carter, who claimed a lien under a second mortgage; that on behalf of his clients he was greatly interested in the proceedings, and that the Carter claim was the only matter before the court for consideration. Plaintiff offered no evidence whatever to refute the records introduced, or the testimony given by the witnesses Lytle and McMullen. On May 9, 1914, the motions were overruled, from which order of the court, together with a subsequent order made pertaining to the sale of said railway property, this appeal was prosecuted.

In answer to the contention that the court erred in overruling said motions to vacate and set aside said purported journal entry, and to strike same from files, the defendants in error Fidelity Trust Company and St. Louis

Union Trust Company say: (1) That plaintiff was entitled to have the decree upon the pleadings; and (2) that, as against the evidence introduced, the court had the right to take judicial notice of what happened at the trial, and to act upon "his own knowledge of matters transpiring at the time of the signing of the decree." We have heretofore shown at some length the state of the pleadings on the date that the decree purports to have been made. From the issues joined and tendered by the several answers and cross-petitions, plaintiff was not upon the issues entitled to the relief, or at least to all the relief, found and awarded by the decree. How, in the face of the pleadings, without proof, the court made the elaborate findings of fact set forth in the decree, we are unable to conjecture. Whether or not the General Electric Company in fact had a lien upon the property and assets of the railway company, and, if so, whether such lien attached to all or part of the property of said company, or to the extensions constructed from and after the date of plaintiff's deed of trust, were questions that under the pleadings could only be determined upon a trial conducted in the manner and according to the forms of law. Obviously it was error for the trial court to render judgment upon the pleadings (if such was done), when there were pending, undetermined, issues of fact, and to refuse upon timely motion to vacate and set aside such judgment. *Stauffer v. Campbell*, 30 Okla. 76, 118 Pac. 391; *Hennessy v. Tacoma Smelting & Ref. Co.*, 33 Wash. 423, 74 Pac. 584. A judgment must determine all the issues properly raised in the case, between all parties properly before the court; hence it is error to render a judgment, final as to all parties, while issues remain undisposed of. 23 Cyc. 771, 772.

As to the second contention, that as against the evidence introduced at the hearing of the motion, the court had the right to take judicial notice of what happened at and during the trial, it is sufficient to say that the record (other than the decree itself) fails to show that a trial in fact was had, except upon the issue joined by the answer of the defendant Carter. From the record before us, duly certified by the same judge who signed the purported journal entry, it is shown that it contains all the evidence and proceedings had in said cause; also there is in the record a signed stipulation of counsel for plaintiff to that effect. A case-made filed in an appellate court imports absolute verity as to what occurred in the trial below. *Richardson v. Penny*, 6 Okla. 328, 50 Pac. 231; *McClellan v. Minor*, 19 Okla. 104, 91 Pac. 863; *St. Louis & S. F. Ry. Co. v. Loughmiller* (D. C.) 193 Fed. 689. It is the sole, conclusive, and unimpeachable evidence of the proceedings in the lower court. If incomplete or incorrect, amendment or correction must be sought by the proper proceedings. In the case of an omission or error in the record, the power exists in the court below to amend such record, so that it may conform to the actual facts and truth of the case. *Oklahoma Fire Ins. Co. v. Kimpel*, 39 Okla. 339, 135 Pac. 6. A mere inference arising from the record that there might have been other evidence introduced at the trial than that produced in the case-made will not outweigh the positive statements of the trial judge that it is all of the evidence in the case. *Gardner v. Kime*, 20 Okla. 784, 95 Pac. 242. There does not appear, nor is it contended by the defendants in error, that one word of evidence, either oral or documentary, on behalf of the plaintiff, was introduced during any hearing had in said cause. The question is not, therefore,

one of what facts the court may assume judicial knowledge, but whether in fact a trial was had. A trial is defined by section 4988, Rev. Laws 1910, to be a judicial examination of the issues, whether of law or of fact, in an action. It follows that without a trial, where issues are joined, the court cannot render judgment. The bonds, upon their face, were not due, and could only have matured upon the breach of a collateral condition maturing them. It was necessary to take evidence to prove what property the deed of trust covered. No specific property was described in either the deed of trust or petition, except certain city lots and the municipal franchise of the railway company. Other property included in the deed of trust was described as:

"All of its right of way, roadbed, and tracks, plant, pole line and wire, and all equipment used in connection with its line of electric railway in said city and town."

The schedule referred to in the decree purports to technically describe in great detail the entire right of way of the railway company. What portion of the property of the railway company described in the decree, or attached schedule, was acquired after the date of the original deed of trust, and whether the lien of the plaintiff was a first and paramount lien on all of the property, real and personal, of the railway company, all involved a consideration of questions of fact that could only properly be determined upon a trial. It would require evidence to prove the reasonable value of the services of both the trustee and his attorneys. As proven by the testimony of the witnesses and the proceedings in said cause, it is conclusively shown that no trial in fact was ever had, except upon the Carter interplea. Indeed, the issues had not been made up in said cause on October 31,

1913, for subsequent to said time the plaintiff filed, not only its reply, but an amendment to its petition. Not only does the record filed with the clerk of the court, more than four months subsequent to the date it bears, attempt to foreclose and conclude the rights of said parties (except as between and among the several defendants), but, if permitted to stand, effectually denies the defendants and interveners the right of appeal. The rule that a judicial record cannot be assailed assumes an honest record. *In re Havird,* 2 Idaho, 687, 24 Pac. 542; *Lowry v. McMillan,* 8 Pa. 157, 49 Am. Dec. 501; *Sweet v. Maupin,* 65 Mo. 65; *Heintz et al. v. Thayer et al.,* 92 Tex. 658, 50 S. W. 929, 51 S. W. 640.

The motion of the defendants in error Fidelity Trust Company and St. Louis Union Trust Company to dismiss the appeal should be and is overruled. While a number of cases by this court are cited in support of their contention, none of them are controlling, or arose under conditions such as are presented by the record before us. The appeal of the plaintiffs in error is prosecuted from the action of the lower court in overruling their motion to vacate and set aside the journal entry of the purported judgment of October 31, 1913. This judgment, we have said, is without force or legal effect; hence the recitals contained therein of the appearance of parties, who in fact did not appear, there being no trial, cannot be accepted as evidence in support of the motion to dismiss. The certificate of the trial judge recites that the case-made tendered and signed "sets forth a true and correct copy, and contains a true and correct statement of the pleadings, motions, orders, filings, evidence, judgment, and proceedings in said cause," and on the day that the case-made was signed and settled, R. B. Thompson, attor-

ney in the lower court for the Fidelity Trust Company and the St. Louis Union Trust Company, signed in said cause a stipulation which recites that the case-made served upon him contained a "full, true, correct, and complete copy and transcript of all the proceedings in said cause, including all the pleadings filed and proceedings had, all the evidence offered and introduced relating thereto, all the orders and rulings made and exceptions allowed, and all the record upon which the judgment and journal entries, and each of them, in said cause, were made; and the same is a true, full, complete, and correct case-made." This case-made does not show that one of the defendants, other than those upon whom the case-made was served, and who have waived the issuance and service of summons in error in this court, ever appeared and filed any pleading or made any defense in the lower court. The petition of the Fidelity Trust Company named the plaintiff in error General Electric Company and a number of others as parties claiming to be creditors of the defendant railway company, and who asserted some right and interest in the subject-matter of the action adverse to the plaintiff as trustee, and made them defendants in order to have determined and concluded their interest and title, if any, in the subject-matter of the suit. It appearing that those defendants who were not made parties to the proceedings on appeal did not make any appearance nor assert any claim or title to the property in litigation, the motion to dismiss must be overruled. *Love, Sheriff, et al. v. Cavett,* 26 Okla. 179, 109 Pac. 553; *Jones v. Balsley & Rogers et al.,* 25 Okla. 344, 106 Pac. 830, 138 Am. St. Rep. 921.

Whatever may be the right of the defendants not brought into the proceedings on appeal, it not appearing that any valid judgment, either for or against them, has been rendered, their rights remain unaffected and may be hereafter determined. *Outcelt v. Collier,* 8 Okla. 473, 58 Pac. 642; *Chapple v. Gidney,* 38 Okla. 596, 134 Pac. 859. We say this for the reason that the only order, judgment, or decree contained in the case-made, by which the rights of said omitted defendants can in any wise be affected, is the purported decree of October 31, 1913, but this in fact did not settle or determine the rights, if such exist, of any of the parties to it, unless it be that of defendant Carter.

From what we have said, it follows that the judgment of the trial court, overruling and denying the motion of plaintiffs in error, should be reversed, and the cause remanded, with instructions to sustain said motion, and to proceed to hear and determine the issues presented by the pleadings as though the purported decree of October 31, 1913, had not been filed.

All the Justices concur.