UNITED STATES FOR THE USE OF CRAWFORD *v.* ADDISON.

1. C. being already duly in office as mayor, under a charter which prescribed that a mayor in office should "continue in office two years, and until a successor is duly elected," was returned by the judges of election as again elected. Upon the counting of the votes cast for the different candidates, the city councils (who had a power to elect where the candidates had an equal number of votes) declared that one A., a rival candidate, was elected; and A. was accordingly installed into office. In a proceeding by *quo warranto*, taken by the United States on the relation of C., judgment of ouster was rendered against A. *Held*, that C. thereupon became entitled to the office, either by virtue of the declaration of the judges who had returned him elected, or by virtue of that provision of the charter which enacted that the mayor shall hold over until his successor was elected.

---

[*] 1 Black, 571.

2. Where an intruder, ousted by judgment on *quo warranto* from an office having a fixed salary,—and of personal confidence, as distinguished from one ministerial,—takes a writ of error, giving a bond to prosecute the same with effect and to *answer all costs and damages if he shall fail to make his plea good*—thus, by the force of a *supersedeas*, remaining in office and enjoying its salary—does not prosecute his writ with effect, and is, after his failure to do so, sued on his bond by the party who had the judgment of ouster in his favor—the measure of damages is the salary received by the intruding party during the pendency of the writ of error, and consequent operation of the *supersedeas.*

3  The rule which measures damages upon a breach of contract for wages or for freight, or for the lease of buildings, where the party aggrieved must seek other employment, or other articles for carriage, or other tenants, and where the damages which he is entitled to recover is the difference between the amount stipulated and the amount actually received or paid, has no application to public offices of personal trust and confidence, the duties of which are not purely ministerial or clerical.

4. A special verdict not received by the court, nor in any way made matter of record, and where, with the assent of the attorney of the party in whose favor it was given, the jury retired by the court's direction and considered further of their verdict, and returned another verdict upon which the judgment of ouster was entered, is of no weight as evidence for any purpose.

ERROR to the Supreme Court of the District of Columbia, the case being thus:

The charter of Georgetown provides that on the fourth Monday of February in each two years, the citizens shall elect a mayor, " to continue in office two years and until a successor is duly elected." The person having the greatest number of votes is to be declared elected; and in the event of an equal number of votes being given to two or more candidates, two council-boards, of which the corporation is composed, are to elect from the persons having such equal number.

With this charter in force, Crawford, being in 1859 mayor of the city, and then duly in office, was in that year a candidate for re-election. His opposing candidate was one Addison. The electors having voted on the election day, the judges of election returned Crawford as the person elected. He accordingly presented himself to the city councils, and offered to take the usual oath. They, however, on a count made by themselves of the vote, declared that Addison was

really elected.   He and not Crawford was accordingly sworn into office and entered upon the duties of mayor.  Crawford then proceeded by *quo warranto* in the Federal court of the District, to test Addison's right to the place; the proceeding being in the usual form of one by the United States at the relation of the party aggrieved; in this instance Crawford.   On this proceeding the jury brought in a verdict that " the votes received by each candidate make the vote a tie." The court, with the assent of Addison's attorney, refused to receive the verdict, and having directed the jury to return to their room and again consider of their verdict, they brought in a new verdict, on which a judgment of ouster was given. To review this judgment Addison took a writ of error from this court, giving a bond in $3000.   The bond, which was to " the United States of America," recited that the Circuit Court for the District in a suit of the United States *at the relation of Crawford*, had lately adjudged that Addison should not intermeddle with the office, privileges, franchises, &c., of mayor, and that he " be taken to satisfy the United States for his usurpation thereof, and that the said Crawford, relator, recover against Addison the sum of $—— for his costs." And it bound Addison and his sureties, to " prosecute the said writ of error with effect, and to answer *all damages and costs if he shall fail to make his plea good.*"

The writ of error having been held by the Court of the District to be a *supersedeas* of the judgment of ouster, Crawford applied to this court in 1859 for a mandamus on the Circuit Court to enforce it, notwithstanding the writ of error.*   The arguments of his counsel in this court were:

1st. That the matter in dispute being an office of personal confidence and trust, and not a thing capable of being bought, sold, or assigned,—it was not a thing which had a " value " within the act, which gave this court jurisdiction only when the matter in dispute was of the value of $1000 or more, and hence that the writ ought to be dismissed.

2d. That the two years—or term of office—for which

---

* See United States ex relatione Crawford *v.* Addison, 22 Howard, 174.

Crawford was elected, would run out before the case brought up by the writ of error could be passed on.

The court, however, considered that the office having a salary, the case did present a subject of "value," and that salary being $1000, of the requisite value. As to the other matter they said:

"The bond and security given on the writ of error cannot be regarded as an idle ceremony. It was designed as an *indemnity to the defendant in error, should the plaintiff fail to prosecute with effect his writ.*"

The mandamus was accordingly refused, and the writ of error suffered to stand, Addison in the meantime enjoying the mayoralty.

In January, 1861, however, the writ of error was dismissed, and on the 21st of that month—*a large part of the term of office having at this time of course passed*—Crawford got that possession of the mayoralty from which the writ of error had till now deprived him. He now brought suit on the writ of error bond in the name of the United States against Addison, the purpose being to recover the amount ($1104) received by Addison as salary from the date of the bond to the time when Crawford got the benefit of the judgment of ouster, a term as it appeared of one year one month and seven days, which he claimed as damages chargeable to the bond. The costs Addison had himself paid. The *narr.* alleged that Addison had *not* prosecuted his writ of error with effect, and that he did *not* answer all damages and costs, in that he had not paid Crawford, at whose relation the suit recited in the bond was brought, $1000 a year, for the year and more in which he Addison was enjoying the office, and which sum he, Crawford, would have had for his own use but for the suing out of the writ of error aforesaid.

On the trial the plaintiff requested the court to instruct the jury as a second instruction, that if they should find that during the time in which Addison acted as mayor he received the salary, and that he did not prosecute his writ of error with effect, then that the plaintiff was entitled to re-

cover the amount so received, and interest on it—provided they should also find that Crawford was duly elected and qualified as mayor, and that he continued and was ready and willing to discharge his duties, and was only prevented from so doing by the interference of Addison, and by his assuming to exercise the functions of the office.

The court refused to give such instruction; assigning as a reason among others for the refusal, that there was no evidence in the case that the defendant by his interference had prevented the plaintiff from the exercise of the office.

*Messrs. Carlisle and Brent, for Crawford, plaintiff in error:*

Crawford's right to sue upon the bond in the way we now sue is settled by what was said by this court on the application for a mandamus. The court then settled also that the value of the mayoralty was its annual salary. All matter and question on it, then, are out of the way. As to the reason specified by the court below for refusing the second instruction asked, it is in the teeth of the evidence showing that the defendant, Addison, had interfered by exercising the duties of the relator's office, and by superseding the judgment of *ouster* by his writ of error bond.

*Messrs. Bradley and Wills, contra:*

1. The *quo warranto* was to try whether Addison had or had not usurped the office—*not whether Crawford was entitled.* The judgment was a judgment of ouster of Addison, not restoration of Crawford. Addison had therefore a right to his writ of error; and, if he failed on that writ, he was liable only for the costs. Those he has paid.

2. The councils had a right to look to the first finding of the jury, which indeed the court refused to receive *as a verdict* of a fact, but which, nevertheless, was a fact ascertained by the jury in a cause in which these two men were parties. This was one of the instruments of evidence upon which the duty of the councils to elect immediately arose.

3. From the day after the date of the bond, Addison held the office of mayor, not by the old, but by a *new title*, de-

rived under the charter of the corporation—that is, by virtue of a new election by the city councils, authorized by the charter in case of a failure to elect by the popular vote in consequence of a tie vote. On this new element of the case, the court in the *quo warranto* proceeding pronounced no judgment, and in regard to *it* the judgment of ouster is irrelevant.

4. The instructions asked were erroneous :

i. Because they assumed that the salary of the office had a pecuniary value *other* than as "a compensation *for labor and services* performed" in the discharge of the duties of that office, contrary to the law.*

ii. Because they assumed that the whole salary received by Addison after the date of the bond, was the measure of such damages; and not the actual damages to Crawford; that is, the profit of the office, if any; or the amount of the salary received by Addison, less the amount which Crawford did receive, or reasonably might have received for his services in some other branch of business during the same period of time. On this point the analogies of the law are decisive. In cases of breach of contract for wages, if the servant is illegally discharged, he is bound to seek other employment, so as to lessen the damages, and his right to recover the stipulated wages is subject to the right to deduct the wages which he could reasonably have earned during time asked by the remainder of the contract. In cases of breaches of contract for freight or lodgings, the claim is subject to be diminished by the amount of freight or rent received, or which might have been received by the exercise of reasonable diligence.

Mr. Justice FIELD, after stating the case, delivered the opinion of the court as follows:

When the application was made to this court for a mandamus to the Circuit Court to compel the issue of process upon the judgment of ouster against the defendant, Addison,

---

* Ritchie *v.* Mauro, 2 Peters, 244.

in the *quo warranto* proceeding, notwithstanding the writ of error and bond, the counsel of the relator contended that the case was not one in which a writ of error would lie; that to authorize the writ the matter in dispute must have a pecuniary value of at least one thousand dollars; that the matter in dispute was a public office of personal trust and confidence, which was not the subject of pecuniary estimation; that the salary annexed was not to be considered as the value of the office, but as an equivalent for the services to be rendered, and even that was payable in monthly instalments; and that a mandamus should accordingly issue, especially as the term of office would expire about the commencement of the ensuing term of the court to which the writ of error was returnable.

The counsel of the defendant, on the other hand, insisted that the pecuniary value of the office was determined by the salary annexed, and as it amounted to a thousand dollars a year the court had jurisdiction to review the judgment on writ of error, and that the bond stayed process on the judgment. And so the court held, and refused the mandamus.*

When in January, 1861, the writ of error was dismissed, and the judgment of ouster against the defendant, Addison, was enforced, the relator was installed into office. He then brought the present suit on the bond.

By the judgment of ouster against Addison, his right to the office of mayor was determined. The relator thereupon became entitled to the office, either by virtue of the declaration of the judges who had returned him elected, or by virtue of that provision of the charter which enacts that the mayor shall hold over until his successor is elected. By the writ of error and the suspension bond the enforcement of the judgment was prevented, and until the writ was dismissed the relator was excluded from the office and deprived of the salary annexed to it. The amount of the salary received by the defendant, Addison, during the period of such deprivation, constitutes, under the decision in the mandamus case,

---

* The United States ex relatione Crawford v. Addison, 22 Howard, 174.

the measure of the damages which the plaintiff is entitled to recover upon the suspension bond.

The second instruction to the jury which the plaintiff requested correctly presents the law of the case, and should have been given.

The rule which measures the damages upon a breach of contract for wages or for freight, or for the lease of buildings, has no application. In these cases the party aggrieved must seek other employment, or other articles for carriage, or other tenants, and the damages recovered will be the difference between the amount stipulated and the amount actually received or paid. But no such rule can be applied to public offices of personal trust and confidence, the duties of which are not purely ministerial or clerical.*

An attempt is made to avoid the liability of the defendant, Addison, by showing that on the trial of the *quo warranto* the jury in the first instance returned a special verdict to the effect that there was a tie in the votes cast for him and the relator respectively. This verdict is not evidence of the fact, for it was not received by the court, or in any way made matter of record. With the assent of the attorney of the defendant the court directed the jury to retire to their room and consider of their verdict. They did retire, as directed, and returned the verdict upon which the judgment of ouster was entered. The original verdict was, therefore, of no weight as evidence for any purpose, and constituted no basis for the action of the councils of the city in the proceeding to elect the defendant, Addison, as upon a tie in the votes cast by the electors. That the members of the councils did not themselves place any reliance upon the validity of their action in this respect is evident from the subsequent installation of the plaintiff after the enforcement of the judgment of ouster.

We are of opinion that the judgment should be REVERSED, and the cause remanded for a new trial, and it is

So ORDERED.

---

* See Costigan *v.* The Mohawk and Hudson River Railroad Co., 2 Denio, 609.