MORRIS ET AL. v. THE PEOPLE, FOR THE USE, ETC.

8    375
s23c 465

8    375
h16   310

1. JUSTICES' PRECINCTS—LEGISLATIVE POWER.

The only limitation upon the power of the legislature in respect of justices' precincts is that relating to the increase of the number of justices in a precinct.

2. SAME—PRESUMPTION.

The statute empowers the board of county commissioners, upon petition of voters of a justice's precinct, to change the precinct or create others. In this case the petitioners described themselves, not

as voters, but as residents of the precinct. *Held*, that it is unimportant how they designated themselves, if in fact they were voters. In the absence of proof to the contrary, it will be presumed in favor of the legality of the order granting the petition that the board satisfied itself of the existence of all the conditions necessary to the exercise of the power.

3. ESTOPPEL.

It seems that an officer who participates in an election for a successor, and is himself an unsuccessful candidate for reëlection, should be estopped to claim that the election was held without authority of law.

4. OFFICER DE FACTO, ACTS OF.

A justice of the peace holding over after expiration of the term for which he was elected is an officer *de facto*, and his acts as such are valid as to the public and third persons.

5. OFFICERS—FEES AND EMOLUMENTS.

The fees and emoluments of an office belong to the officer *de jure*. When they are taken and appropriated by the officer *de facto* by virtue of his unlawful possession of the office, he must account to the officer *de jure* for the amount received.

6. SAME—SURETIES.

A justice of the peace wrongfully holding over after expiration of his term and excluding his successor from the office, together with the sureties on his official bond, is liable to the successor for the fees and emoluments received while so wrongfully exercising the office.

*Error to the District Court of Arapahoe County.*

Mr. CHAS. G. CLEMENT, for plaintiffs in error.

Mr. GEORGE SIMMONDS, *pro se.*

THOMSON, J., delivered the opinion of the court.

This suit was brought upon the official bond of Robert Morris as justice of the peace, and resulted in a judgment against the defendants, from which they have prosecuted error to this court. The facts are not in controversy. The disagreement between parties relates to the law which should be applied to the facts.

At the general election held in Arapahoe county in November, 1888, the defendant Morris was duly elected justice of the peace for precinct No. 2, in that county. Before enter-

ing upon the duties of his office, he gave bond pursuant to law, with the other defendants as sureties, conditioned for the faithful discharge of the duties of the office, and the delivery to his successors of all books, papers and other things which might be so required by law.   Morris thereupon entered into his office, and discharged the duties pertaining to it for the statutory term of two years.   On the 5th day of May, 1890, upon the petition of certain persons styling themselves "residents" of justice precinct No. 2, in Arapahoe county, the board of county commissioners divided the precinct and carved out of it another precinct, which they designated as No. 12. The relator and Morris both resided in precinct No. 2, as it was constituted after the division.   At the general election held in Arapahoe county in November, 1890, the term of office for which Morris was elected being about to expire, himself and the relator were opposing candidates for the office of justice of the peace of the new precinct No. 2, and both participated in, and voted at, the election.   The relator was the successful candidate, and Morris was defeated.   Upon the expiration of Morris's term the relator, as his successor, having duly qualified for the purpose, demanded of him the books, dockets and papers pertaining to the office, but he refused to deliver them, and retained them, and continued to act as justice until April 7, 1891.   Upon the refusal of Morris to comply with the relator's demand, the latter instituted proceedings in mandamus in the district court of Arapahoe county, to compel the delivery by Morris to the relator of the books, dockets and papers belonging to the office. Upon the hearing of the case, a peremptory writ was ordered as prayed.   Morris appealed from the judgment to the supreme court, which declined jurisdiction of the case, and dismissed the appeal.   Thereupon, on April 7, 1891, Morris turned over the books, etc., to the relator.   During the time Morris had possession of them, he received as fees out of business brought to him as justice $331.35.

The grounds upon which the defendants in error rely for a reversal of the judgment are, *first*, that the act of the leg-

islature in pursuance of which the board of commissioners made the order dividing precinct No. 2 is in conflict with section 11 of article 14 of the constitution, and therefore void; that the order being void, precinct No. 2 has never been divided, and retains its original boundaries; that the election held in November, 1890, for justice of the peace in the alleged new precinct No. 2, was held without authority of law, and that the only claim of the relator to the office being by virtue of that election, he was without title; *second*, that supposing the statute to be constitutional, the petition upon which the board acted in making the order was not in conformity with the requirements of the statute, and did not authorize the action of the board, and that for that reason the order was invalid, and the attempted division of the precinct nugatory; and, *third*, that, waiving the foregoing objection to a recovery, the doings of Morris in acting as justice, and receiving the fees and emoluments of the office, after the relator had been elected and qualified as his successor, do not constitute a breach of the conditions of the bond. We shall examine these several positions taken by counsel in the order in which they are stated.

## I.

The following is section 11 of article 14 of the constitution: " There shall, at the first election at which county officers are chosen, and annually thereafter, be elected in each precinct one justice of the peace and one constable, who shall each hold his office for the term of two years; Provided, that in precincts containing five thousand or more inhabitants, the number of justices and constables may be increased as provided by law."

The act pursuant to which the order of the board was made provides as follows: " The boards of county commissioners of the several counties of this state shall at their July meeting, next after the passage of this act, divide their respective counties into as many justices' precincts as the necessities of the county may require, and upon the petition of the voters

of any such precinct may change the same, or create other such precincts, and shall cause to be entered in the journal of their proceedings a record of such precincts, giving accurate boundaries thereof." Gen. Stats., sec. 666.

There is no obvious conflict between the constitutional provision and the statute. The constitution makes no provision concerning the creation of justices' precincts. It contains no limitation upon the power of the legislature to provide for the division of counties into justices' precincts, and for the creation of such new precincts as changing circumstances made from time to time demand. A precinct may become so populous that one justice is unable to transact its business, and the legislature is authorized to provide for additional justices in precincts containing more than five thousand inhabitants. On the other hand, the territorial area of a precinct containing less than five thousand people may be so large that the convenience of the inhabitants requires its division; or by unsettled portions of a county becoming occupied, new precincts may be necessary to accommodate the new population. There is a wide difference between increasing the number of justices in the same precincts, and creating new precincts; and there is no constitutional inhibition against legislation looking to the increase or alteration of precincts. The legislature has the authority to provide for the division of counties into justices' precincts in the first instance, and by the same authority it may provide for dividing precincts, changing their boundaries, or establishing new ones. The only constitutional limitation upon its power in the matter of justices' precincts relates to increasing the number of justices in the same precinct. In *Commissioners v. Smith*, 22 Colo. 534, Chief Justice Hayt, incidentally speaking of the statutory provision which we have quoted, said: "We know of no provision of the constitution with which the act conflicts;" and we are unable to see how a limitation upon the power of the legislature to provide for additional justices in the same precinct affects, or can affect, its authority to provide for establishing pre-

cincts originally, or for changing them, or adding to the number after they are established. We must hold the act in question to be in harmony with the constitution.

## II.

The statute empowers the commissioners upon petition of the voters of a precinct to change the precinct, or create other precincts. In this case the petitioners described themselves, not as voters, but as residents, of precinct No. 2, and hence it is contended that the board had no authority to act upon the petition. We do not think the argument sound. In our opinion it is entirely unimportant how the petitioners may have designated themselves in their petition. The statute does not empower the commissioners to act upon a petition of persons representing themselves as voters of the precinct without more. They must be voters in fact, and the commissioners must be legally satisfied that they are voters. That they style themselves voters would not relieve the commissioners of the duty of ascertaining whether they are such. No legal formality is necessary in such a petition, and it is immaterial whether the petitioners call themselves residents or voters, provided the petition is otherwise sufficient, and an investigation shows that they are voters. As in this case the commissioners made the order, and as ample power was conferred upon them for that purpose, we must presume that they satisfied themselves that the petitioners were voters of the precinct, and that all the conditions necessary to the exercise of the power existed. The presumption being in favor of the legality of the order, without proof of facts which invalidated it, it must be upheld.

But the position taken by Morris in this litigation is at least equivocal. He submitted his claim to the office to the voters of the precinct, and they rejected it. He was a candidate against the relator; he took an active part in the election, and the result was unfavorable to him. He does not seem to have entered the contest with any intention of abiding the event, unless it should be satisfactory to him. If he was

successful, he could hold the office by virtue of the election. If he failed, he could repudiate the election and hold the office by virtue of his former commission, on the ground that no successor had been legally chosen. The law does not regard a position like that with favor. He does not pretend that he participated in the election, or submitted his candidacy to the voters without a full knowledge of all the facts, and we do not think that even if the election was irregular, we are required to search for reasons why he was not bound by the result.

### III.

Were the fees received by Morris for official business transacted by him during the time he continued to act after his term had expired recoverable in this case? It is contended that if the relator was *de jure* the justice, the acts of Morris were void, that all moneys collected by him could be recovered back by the parties paying them, and that there were therefore no fees or emoluments of the office for which he was liable to the relator. It is further maintained that receiving moneys after the expiration of his term, even if his acts during the time were not void, constitute no breach of any of the conditions of the bond.

We do not deem it necessary to enter into any extended discussion of the validity of Morris's acts while wrongfully withholding from the relator the possession of the office. He continued in office, and discharged the duties and exercised the functions of a justice of the peace after he ceased in law to be a justice, claiming that no successor had been legally elected. He was not a usurper, or an intruder, but claimed the office, and continued to act in it, under a title which before that time he unquestionably had. He held by color of title from his original election. He was therefore an officer *de facto* within every definition of the term, and all his acts as such were valid as to the public and third persons. *Hamlin v. Kassafer*, 15 Ore. 456; *State v. Williams*, 5 Wis. 308; *Petersilea v. Stone*, 119 Mass. 465; *State v. Car-*

*roll*, 38 Conn. 449. The fees which Morris exacted and received could not be recovered back by those paying them. The legal title to the office was in the relator, and the pos-session was in Morris. The fees and emolument which per-tained to the office after the title of the relator accrued, belonged to the relator, and Morris having by virtue of his unlawful possession taken and appropriated them, must be held liable to the relator for the amount received. *Mayfield v. Moore*, 53 Ill. 428; *Comstock v. Grand Rapids*, 40 Mich. 397; *Nichols v. MacLean*, 101 N. Y. 526. As against Morris personally the right of the relator is clear; but the question remains whether the money is recoverable in an action on Morris's official bond. It is vigorously contended that such an action cannot be maintained, and the reason given is that the acts complained of occurred after his term had expired, and are not covered by any condition of the obligation. This position of counsel is worth examining. In the law concern-ing justices and constables we find the following:

" "SEC. 141. That whenever the term of office for which any justice of the peace may have been elected shall expire, it shall be the duty of such officer to deliver over his docket, statutes, and all papers relating to the business transacted before him, to his successor in office, upon demand, after such successor shall have been qualified according to law, whose duty it shall be to proceed to the completion of all unfinished business, to issue executions upon judgment re-maining unsatisfied upon such docket, and to collect the same, and have the same power in respect to such docket and papers as if the same pertained to proceedings originally instituted before him."

"SEC. 142. Any justice of the peace failing or refusing to deliver any statutes, books, dockets or papers, as required by this chapter, for the space of ten days after the same are demanded, shall forfeit and pay the sum of ten dollars, to be recovered by an action of debt in the name of the county treasurer, for the benefit of the county, besides being, together with his securities in his official bond, liable to the county

and to all persons interested for all damages and losses which may be sustained by reason of such failure or refusal." Gen. Stats., pp. 649, 650.

Now, what damages are recoverable for the failure or refusal of a justice of the peace, whose term has expired, to deliver the books, records and papers belonging to the office to his successor? It cannot be said that the person aggrieved is confined in his recovery to the market value of the things withheld. They have no substantial value except in the hands of the person using them. The statute expressly provides for the liability of the obligors to the persons interested for all damages and losses sustained by reason of the failure or refusal to deliver them. They are the legal *indicia* of title, and by retaining them and continuing to act in all respects as before, Morris withheld possession of the office from the person lawfully entitled to it. The fees and emolument which he collected were incident to the office, and if the relator had been in possession he would have received them. The retention of the books, dockets and papers after demand made was a breach of the conditions of the bond; and the damages and losses sustained by the relator were the fees belonging to him, appropriated by Morris, and which the latter was enabled to obtain by his unlawful possession of the legal *indicia* of title. These damages were therefore the direct result of the failure and refusal of Morris to deliver the books, dockets and papers.

In our opinion the judgment was right, and must be affirmed.

*Affirmed.*