## No. 9100.

### DRACH v. LECKENBY ET AL.

1. OFFICER—*De Facto*—*Salary*.  Payment of the salary of an office to one occupying it without right, but performing its duties, bars the action therefor of the officer *de jure* against the state.

   But one who not being entitled to an office performs its duties, under a mistaken claim of right, made in good faith, will not be allowed to recover the salary thereof after another has been judicially ascertained and declared entitled thereto.

2. —— The *de jure* officer, ready and willing to discharge the duties of his place, and prevented only by the *de facto* incumbent, may recover the salary from the *de facto* officer who has received it.

*Error to Denver District Court, Hon. Chas. C. Butler, Judge.*

Messrs. BARNETT & CAMPBELL, for plaintiff in error.

Messrs GOSS & KEMP, Mr. HAROLD H. HEALY, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

The action was in *mandamus* by E. E. Drach to compel the State Auditor to issue warrants for salary earned while acting as State Bank Commissioner.   In response to the alternative writ the Auditor filed an interpleader which set out that one McFerson claimed to be the *de jure* Bank Commissioner for the period in question, and entitled to the salary, and prayed that he be brought in in order that

the court might determine to whom the warrants should issue, and he was accordingly made a party.

In his answer to the alternative writ McFerson set up a final judgment in *quo warranto* which declared him to be the *de jure* Bank Commissioner, and to have been such officer from May 6th, 1915, to July 5th, 1916, the time for which petitioner demanded pay, and during which period Drach was held disentitled to the office. The court entered judgment against Drach, and the auditor was directed to issue warrants for the salary during the period in question to McFerson. This decree is here for review on error. In the opinion the parties will be designated as in the trial court.

It will be necessary to consider only those assignments which relate to the right of Drach as *de facto* Bank Commissioner to recover salary. The question is whether a *de facto* officer, who performs the duties of an office to which there is a judicially ascertained *de jure* claimant after surrender of the position to such officer, recovers salary.

It is urged that there is no property right in a public office; that it is not a franchise, and that the one who performs the duties is entitled to the pay. Cases holding that the salary of an officer may be increased or reduced at the will of the legislature, or that, in the absence of constitutional inhibition, it may lawfully abolish an office, or that the salary is deemed an equivalent for the services rendered, or that a person is not entitled to the salary unless he both hold and discharge the duties of the office, are cited in support of the claim of petitioner. These principles may be conceded to be correct, but they have not the remotest application to this case.

*Henderson v. Glynn,* 2 Colo. App. 303, 30 Pac. 265; *El Paso County v. Rhode,* 41 Colo. 258, 95 Pac. 554, 16 L. R. A. (N. S.) 794, 124 Am. St. 134, and *Thompson v. City of Denver,* 61 Colo. 470, hold that payment to a *de facto* officer is a defense to the State in an action by the *de jure* officer to recover the salary. From this sound doctrine peti-

tioner attempts to extract the premise that because he might have compelled payment of his salary while performing the duties of the office, he may after the *de jure* officer has been disclosed by court decree, still enforce his claim against the State.  It is true, as urged by petitioner, that such payment to him while he occupied the office would have barred McFerson from recovery from the State, but he, however, ignores the proposition that McFerson, after having been declared the *de jure* officer, could have maintained an action against the *de facto* officer for the emoluments of the office, even though the latter had discharged the duties attached to the place.  Drach while serving might have compelled payment to him, not because the salary attaches to the person who performs the service, but because as matter of sound public policy, the business of the State must go forward in an orderly manner, and the question of the right to the office not having been determined the *de facto* officer, in the interest of the public, and because the question of title to the office cannot be determined in mandamus, is permitted to perform the service and get the salary.  But when the *de jure* officer has been ascertained, the *de facto* incumbent must respond to him for such salary.  That the *de jure* officer can compel such repayment is almost unanimously held.  The only well considered case, which we have been able to find, holding otherwise, is *Stuhr v. Curran*, 44 N. J. L. 191, 43 Am. Rep. 353.

In *Eubank v. Montgomery County*, 127 Ky. 261, 105 S. W. 418, 128 Am. St. 340, reported in 16 A. & Eng. Ann. Cas. 483, at page 484, it is said in discussing the rights of a *de facto* officer to salary:

"* * * We are satisfied that in the case at bar Eubank was standing on his legal rights with notice that his right was disputed, and that he took the risk of his right being upheld.  A man cannot be allowed to hold on to an office to which he is not entitled when he knows his right to the office is denied and then claim compensation for his services after it has been held that he had no right to the

office. By holding on to the office under such circumstances he takes the risk of his right being established. * * * We have held that he could not be punished for usurpation of office, and if we should now adjudge him entitled to the emoluments of the office, he would be in the same status as if he had been adjudged the office. It is a sound rule of public policy that those who hold public offices without right are not entitled to the emoluments of the office. Their acts are valid as to third persons for the benefit of the public, but they are invalid as to themselves. If their acts are invalid as to themselves, they cannot be adjudged compensation from the public for their acts."

In *United States v. Addison,* 6 Wall. 291, 18 L. Ed. 919, the court passed upon the refusal to give an instruction to the effect that if the jury should find that the *de facto* incumbent of an office had received the salary thereof, the *de jure* officer was entitled to recover from him that amount with interest, providing the jury also found the *de jure* officer was ready and willing to discharge the duties, and was prevented only by the interference of the *de facto* incumbent. This instruction was declared to correctly state the law, and its refusal was adjudged reversible error.

In *People v. Tieman,* 30 Barb. 193, it is said at page 195:
"The salary and fees are incident to the title and not to the usurpation and colorable possession of an office. An officer *de facto* may be protected in the performance of acts done in good faith in the discharge of the duties of an office under color of right, and third persons will not be permitted to question the validity of his acts by impeaching his title to the office. Public interests require that the acts of public officers, who are such *de facto,* should be respected and held valid as to third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice. (2 Kent's Com. 295.) It does not follow that a right can be asserted and enforced on behalf of one who acts merely under color of title without legal authority, as if he were an officer *de jure,* when an individual claims by action the office, or the incidents

to the office, he can only recover upon proof of title. Possession under color of right may well serve as a shield of defense, but cannot, as against the public, be converted into a weapon of attack, to secure the fruits of the usurpation and incidents of the office."

Speaking to the same question the Supreme Court of West Virginia in *Bier v. Gorrell,* 30 W. Va. 95, 3 S. E. 30, 8 Am. St. 17; at page 97, said:

"It seems to be well settled that a *de jure* officer who has been kept out of his office by the intrusion of another person, may by action recover from such person for the injury sustained by him, and that in such action the lawful perquisites which the plaintiff would have received if he had exercised the office are the proper measure of his recovery. * * * It seems to be a principle of natural justice, as well as law, that where one person has injured another, or received the compensation which in equity and good conscience belongs to another, he may be required by action to account to such other for the injury done him. In like manner will an intruder in office be required to account to the legal officer for injury done by the intrusion. The legal right to an office confers the right to receive and appropriate the fees and perquisites legally incident thereto. When such officer performs the duties of his office, he may demand and receive the compensation therefor allowed by law, and he is as fully entitled to such compensation as he would be in any other case entitled to pay for skill and labor done for another at his request. The legal fees and emoluments of an office are a part thereof, and belong to the rightful incumbent; and, where a person receives such fees and emoluments on the pretense of title to the office, the *de jure* officer may recover the profits from him by an action in *assumpsit* for money had and received to his use. * * * Where the office is one with a fixed salary attached to it, the officer will be entitled to recover the entire official salary, without any deduction for the services of the incumbent, or for what he may have earned himself while ousted."

In discussing the right of a *de facto* officer to compel payment by the State of his claim for services while wrong, fully in office, the court in *Matthews v. Supervisors,* 53 Miss. 715, 24 Am. Rep. 715, said:

"The question at issue here is whether he can assert against the State, or against a county, which is the constituent part of a State, a demand for office fees, which he claims to have earned by a violation of her constitution. If he can do so, there is an end at once of all distinctions between a *de jure* and a *de facto* officer, since it is impossible to perceive how the latter, while undisturbed by *quo warranto,* occupies a position at all inferior to the former. The acts of both are alike valid, both would be protected from the assaults of private persons, and each would have an equal claim upon the State for compensation. Such a construction of the law would be a direct encouragement to usurpation of office. The intruder or the incumbent wrongfully holding over, would be liable, indeed, to be ejected at the end of a long and costly litigation, but in the meantime he would have grown rich by the fees and salaries which he would have extorted from the State, whose laws he had violated in holding the position."

The principle that the emoluments of the office belong to the *de jure* officer is asserted and approved in *Coughlin v. McElroy,* 74 Conn. 397, 50 Atl. 1025, 92 Am. St. 224:

"The courts of this country that have had occasion to pass upon this last question have almost unanimously answered it in the affirmative. That, in cases like the present, the legal right to the office carries with it the right to the salary and emoluments thereof, that the salary follows the office, and that the *de facto* officer though he performs the duties of the office, has no legal right to the emoluments thereof, are propositions so generally held by the courts as to make the citations of authorities in support of them almost superfluous. Nearly all, if not all, cases hereinbefore cited upon both views as to the liability of the city, hold that the *de facto* officer, for fees and emoluments of the

office received by him, is liable at common law to the officer *de jure*. So far as we are aware the only well considered case taking a contrary view of the law is that of *Stuhr v. Curran*, 44 N. J. L. 181, 186, 43 Am. Rep. 353, and that was decided by a divided court standing seven to five. We think the able dissenting opinion of Chief Justice Beasley in that case shows conclusively that at common law, in a case like the present, the *de jure* officer is entitled to recover from the *de facto* officer. Another well considered case directly in point in favor of this view is that of *Kreitz v. Behrensmeyer*, 149 Ill. 496. * * * That this law will at times operate harshly against the *de facto* officer, and that it will so operate in the case at bar, must be conceded; and the seeming injustice of it is forcibly stated in the majority opinion of the New Jersey court before cited; but the courts must enforce the law as it is and not the law as they think it ought to be. If the law requires to be changed that must be left to the legislature."

Speaking to the same question, Throop on Public Officers, as section 659, says:

"It is recognized in several of the cases hereinbefore cited, and directly in those contained in the note, which hold, that where an officer claims any right, by virtue of his office, he must show that he is an officer *de jure* as well as officer *de facto*. * * * Thus, as was said by a learned judge of the Court of Appeals of New York: 'Where a person sets up a title to property, by virtue of an office, and comes into court to recover it, he must show an unquestionable right, that it is not enough that he is an officer *de facto*, that he merely acts in the office; but he must be an officer *de jure*, and have a right to act."

And at section 661:

"A person, who sues to recover from a municipality or other public body, the salary or other emoluments attached to an office which he claims to hold; or who sues a private person, to recover fees allowed by law for official services; must, if his right to the salary, fees or other emoluments, is put in issue, show, not only that he has

acted as such officer, but also that he did so as an officer *de jure*."

And Mechem on Public Officers, section 331, states this:

"But while the acts of the *de facto* officer are thus valid as to third persons, he cannot himself acquire rights based upon his defective title. It is well settled, therefore that he cannot maintain an action to recover the salary, fees or other emoluments attached to the office."

The rights and duties of *de facto* officers are discussed in 29 Cyc. 1393, as follows:

"As the rule regarding *de facto* officers has been adopted merely with the idea of protecting the public, the *de facto* officer is not permitted to benefit personally from what is technically a usurpation of the office. He thus has no claim to the emoluments of the office. As a necessary consequence the *de facto* officer is liable to the *de jure* officer for the emoluments of the office obtained during the time he has wrongfully occupied the office."

*Henderson v. Glynn, supra, El Paso County v. Rhode, supra,* and *Thompson v. City of Denver, supra,* are cited by petitioner in support of his claim. These cases are not in point. They hold only that payment by the State of the salary to a *de facto* officer is a defense in a suit by the *de jure* officer to recover the same salary from the State. Such payment by the State, and such defense, is permitted upon the principle of public emergency and necessity as already pointed out in this opinion.

There are Colorado cases, however, directly supporting the doctrine that the emoluments of the office may be recovered from a *de facto* officer by the *de jure* claimant.

*Morris v. People,* 8 Colo. App. 375; *Church v. Mullins,* 10 Colo. App. 318. This principle is also affirmed in *Arnold v. Hiltz,* 61 Colo. 8, which, although upon an entirely different state of facts from those here involved, is in principle authority for the views herein expressed.

That the salary is attached to the office, and is not the property of one who unlawfully holds the office and per-

forms the duties thereof, is announced and approved in following additional cases:

*Cobb v. Hammock,* 52 Ark. 584, 102 S. W. 382; *McCue v. Wapello County,* 56 Iowa 698, 10 N. W. 248, 41 Am. Rep. 134; *Stott v. Chicago,* 205 Ill. 281, 68 N. E. 736; *Phelon v. Granville,* 140 Mass. 386, 5 N. E. 269; *Fylpaa v. Brown County,* 6 S. D. 634, 62 N. W. 962; *Dolliver v. Parks,* 136 Mass. 499; *State v. Schram,* 82 Minn. 520, 85 N. W. 155; *Luzerne County v. Trimmer,* 95 Pa. 97; *Com. v. Slifer,* 25 Pa. 23, 64 Am. Dec. 680; *Riddle v. Bedford County,* 7 Serg. & R. 386; *Vicksburg v. Gromme* (Miss.) 24 South. 306; *Christian v. Gibbs,* 53 Miss. 314; *Ermston v. Cincinnati,* 9 Ohio Sup. & C. P. Dec. 657; *State v. Newark,* 8 Ohio Sup. & C. P. Dec. 344; *Dolan v. New York,* 68 N. Y. 274, 23 Am. Rep. 168; *In re Berger,* 152 Mo. App. 663, 133 S. W. 96; *Russell v. Lyon,* 90 S. C. 5, 72 S. E. 496; *Lawrence v. Wheeler,* 90 Kan. 669, 136 Pac. 315; *Mayfield v. Moore,* 53 Ill. 428, 5 Am. Rep. 52; *Kreitz v. Behrensmeyer,* 149 Ill. 496, 36 N. E. 983, 24 L. R. A. 59; *Douglas v. State,* 31 Ind. 429; *Sigur v. Crenshaw,* 10 La. Ann. 297; *Nichols v. McLean,* 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; *Wenner v. Smith,* 4 Utah 238, 9 Pac. 293; *Fulgham v. Lightfoot,* 1 Call (Va.) 250; *Booker v. Donohoe,* 95 Va. 359, 28 S. E. 584; *Rule v. Tait,* 38 Kan. 765, 18 Pac. 160; *Hogan v. County,* 132 Tenn, 554, 179 S. W. 128; *Sandoval v. Albright,* 14 N. M. 345, 93 Pac. 717; *State ex rel. Evans v. Gordon,* 245 Mo. 12, 149 S. W. 638; *Jones v. Dunsman,* 246 Pa. 513, 92 Atl. 707, Ann. Cas. 1916D, 472; *Comstock v. Grand Rapids,* 40 Mich. 397; *Whitaker v. Topeka,* 9 Kan. App. 213, 59 Pac. 668; *Scott v. Crump,* 106 Mich. 288, 64 N. W. 1, 58 Am. St. Rep. 478; *Andrews v. Portland,* 79 Me. 490, 10 Atl. 458, 10 Am. St. Rep. 280; *Tanner v. Edwards,* 31 Utah, 80, 86 Pac. 765, 120 Am. St. Rep. 919, 10 Ann. Cas. 1091; *Kendall v. Rayboud,* 13 Utah, 226, 44 Pac. 1034; *State v. Carr,* 129 Ind. 44, 28 N. E. 88, 13 L. R. A. 177, 28 Am. St. Rep. 163; *Meagher v. Storey County,* 5 Nev. 244; *O'Brien v. St. Paul,* 72 Minn. 256, 75 N. W. 375; Stephens v. Campbell, 67 Ark. 484, 55 S. W. 856.

The leading case upon which petitioner relies is *Stuhr v. Curran, supra,* in which it was held that one who had received a certificate of election to a public office, and was subject to a statutory penalty, which distinguishes it from the present and other similar cases, if he failed to qualify and perform the duties thereof, might retain the salary of the office when he had performed the duties as against one who later was declared to be legally elected. This opinion, as pointed out in *Coughlan v. McElroy, supra,* was by a divided court, seven to five, with a strong and persuasive dissenting opinion by Chief Justice Beasley, in which four other Justices concurred. And it is to be further noted that in a recent case, *Gaskill v. Atlantic City,* 89 N. J. L. 269, 98 Atl. 385, upon facts quite like those here involved, it was held by the same court that a *de facto* officer could not recover the emoluments of the office from the State.

It is conceded that petitioner occupied the office under a mistaken claim of right. But such mistake, even coupled with actual performance of the duties of the place, gives no right to the salary as against the *de jure* officer. The emoluments follow, and are inseparable from, the legal title. No motive, however worthy, can protect the *de facto* incumbent from the consequences of his intrusion, so far as payment for services be concerned. The fact that he labored under a mistake of law, and was free from bad intent, does not detract from the damage done to the rightful claimant. Drach took the risk of the validity of his title, and the loss should fall upon him rather than upon the one who holds the true title.

Upon practically unanimous authority it is settled that a *de facto* officer cannot recover compensation for services rendered, after the *de jure* claimant, as here, has been judicially ascertained and declared, and a plea by the Auditor in his return to the alternative writ that McFerson had been finally declared to be the *de jure* officer would have been a complete bar to recovery of salary by Drach from the State.

The question of the right to the office having been de-

termined against Drach, the matter of awarding the salary to McFerson by decree in mandamus becomes immaterial and will not be disturbed. Under a different state of facts this question might present legal difficulties of a serious nature.

The judgment of the trial court should be affirmed and it is so ordered.

*Judgment affirmed.*

Decision *en banc.*

Mr. Chief Justice Hill, Mr. Justice Teller and Mr. Justice Scott dissent.

Mr. Justice Teller dissenting:

I cannot agree with the majority opinion that the question presented on this record has, in principle, been determined in this state. It is, in my judgment, a case of first impression, and should be decided on sound principle; by which statement I eliminate all precedents which are not founded on established legal principles, or which do not follow cases so founded.

A considerable part of the majority opinion is devoted to cases which hold that a *de jure* officer may recover from a *de facto* officer fees or salary which he has received, though that is not the question here presented.

This cause involves only the right to the salary of an office by one who has, *in good faith,* and under the color of right, discharged for a time the duties of such office. It may be said, of course, that, if a *de facto* officer cannot retain the salary paid him, it results that he had no right to it in the first instance. The cases on that point may, then, fairly be open for consideration in this case.

It is not to be questioned that the great majority of cases, in which the right of a *de jure* officer to the salary was in issue, support the majority opinion. My objection to following them is that they are based, either directly or indirectly, on English cases which do not apply in this country; or on an erroneous view of the ground on which the right is claimed.

In England public offices are incorporeal hereditaments, the subject of grant, and the holder has an estate in them to him and his heirs, for life, for a term of years, or at pleasure. 2 B. Com. 36. In other words, an office is property.

From that fact it follows that one entitled to an office is entitled to the emoluments thereof, even though he does not have possession of it, as fully as the owner of land of which he has been wrongfully dispossessed is entitled to the rents and profits of it. Many American cases announce this doctrine, regardless of the facts which make it inapplicable here.

In this country a public office is an agency for public purposes, and can not be sold or transmitted to heirs.

It is not a matter of grant or of contract, and is in no sense property. The majority opinion concedes this, and then proceeds to cite and approve a line of cases based wholly on the English doctrine to the contrary. Take away the common law ground of the rule which is announced in the majority opinion, that "the emoluments follow, and are inseparable from the legal title," and there is nothing to support it.

The salary is no part of the office, as has been many times held, and the very word contradicts the assertion that it belongs to the holder of the title to an office, regardless of services. Salary is compensation for services rendered, and has no similarity to income and rents from property. It does not grow out of the office, but is attached to it upon a condition implied that the officer will perform the duties of his office. Under the constitution of this state (Art. 12, Sec. 2), no person can hold a public office "without devoting his personal attention to the duties of the same."

If an office can not be held without a discharge of its duties, how can any right to the salary of it accrue to any one who has not discharged those duties?

Before one entitled to an office has qualified and entered upon its duties, he has only the right to obtain possession of it and *earn the salary.*

The rights of a *de jure* officer are thus defined in *Nichols v. McLean*, 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730, and that is the only reasonable definition that can be given. If one has no property in an office, he can derive pecuniary benefit therefrom only by doing something to earn it. This, however, is not to say that a *de jure* officer may not have a right to damages because excluded from the office, and the opportunity to earn the salary. That rests upon other grounds.

The opinion rightly limits the decisions in this state to the rule that a *de facto* officer, while still in office, may recover his salary from the state, but fails to note that such rule is in conflict with many of the cases cited, which hold that to recover from the state the officer must establish his title as a basis of his right. So far as our cases throw any light upon this question, it would seem that they are against the conclusion of the majority opinion, since they recognize a right to compensation as resulting from possession and services in the office.

Expressions not called for by the facts in those cases can not be regarded as controlling.

This case well illustrates the danger of following precedents without considering the grounds upon which they are based. The majority opinion quotes at length from *People v. Tieman*, 30 Barb. 193, a case determined by a single judge, at *nisi prius*, on an application for a mandamus. The matter quoted is pure *dictum*, since the office which the relator claimed to have exercised was found by the court to have been abolished by statute prior to the time of the alleged incumbency. It may be said in passing that this also was the ground for the decision by this court in the case of *Arnold v. Hilts*, cited in the majority opinion; that is, that the office had been abolished. This New York case is also the basis of the decision in *Dorsey v. Smith*, 28 Cal. 21, which is itself the foundation of a line of decisions in that state and of other states. On such worthless foundation does the rule rest.

The next case from which quotation is made is *Bier v.*

*Gorrell,* 30 W. Va. 95, 3 S. E. 30, 8 Am. St. 17, an action for damages against a *de facto* officer. This case cites as authority *Boyter v. Dodsworth,* 6 Term R. 681; *Auditor v. Benoit,* 20 Mich. 176, 4 Am. Rep. 382, and *Mayfield v. Moore,* 53 Ill. 428, 5 Am. Rep. 52. The English case involved an office held by patent, to which no fees were attached, and the right of recovery by the patentee was denied. Lord Kenyon there said:

"With regard to natural justice, the person who performs the duty is entitled to the money given for such duty. Here the defendant in fact performed the services and on principles of natural justice he is entitled to the reward."

In the Michigan case the court, after citing with approval *Smith v. Mayor,* 37 N. Y. 518, and pointing out that an office is not one of contract relation, said:

"There can be no consistent theory except that which regards official rewards as the recompense for actual or implied official work. Nor would it be possible in most cases to have the work done without some certainty of pay for it. An officer is not to be expected to work for nothing so long as it may please his enemies to assume to doubt his title. * * * The laws assume that the laborer is worthy of his hire, and the person who is required to be recognized for the time being as the legal incumbent for the purpose of doing the work should be recognized for remuneration also, so far as those are concerned with whom he deals officially, and who have no personal interest in the contest for the office."

In the New York case above mentioned it is said:

"An office in this country is not property, nor are the prospective fees of an office the property of the incumbent (*Conner v. Mayor,* 1 Seld. 285). The incumbent can not sell his office or purchase it or incumber it. It will not pass by an assignment of all his property, nor will such an assignment affect his right to prospective fees. (*Id.* and cases cited.) * * * The same authority holds, and it is conceded by the appellants here, that the right to fees

or compensation does not grow out of any contract between the government and the officer, but arises from the rendition of the services (citing cases). An office is simply an appointment or authority on behalf of the government to perform certain duties, usually at and for a certain compensation. * * * There can be neither property nor contract in such a subject. It is but a deputation for the benefit and advantage of the government."

It was accordingly held that, since the plaintiff had no contract with the city, he had no right of recovery.

The Illinois decision is founded upon the English doctrine above discussed, quotes from Blackstone the definition of an office above given, and says:

"The fees of an office are incident to it as fully as are the rents and profits of land or the increase of cattle"—a statement impossible of acceptance without holding that an office is property.

An examination of the large number of cases cited in support of the majority opinion discloses the fact that a great majority of them follow the English precedents, regardless of their inapplicability under the conditions in this country. The rest of the cases are based upon the proposition that the principle which renders the acts of a *de facto* officer valid, as concerning the public and third parties, does not apply when he is claiming something for himself. If by this is meant that he can not rely upon the principle when, for his own benefit, he asserts that some particular official act performed by him is valid because done while he was a *de facto* officer, there is no reason to question it. The right of a *de facto* officer to recover for his services does not, however, depend in the least degree upon the validity of his acts. The claim is for compensation for public services which are valid on grounds of public policy. He is making no claim upon any specific act whose validity is open to question. The right of a *de facto* officer to such compensation has been recognized many times, as is shown by quotations heretofore made, and it has often been judicially recognized that until one has performed

the duties of an office he can not recovery the salary thereof.

In *Steubenville v. Culp,* 38 Ohio St. 18, 43 Am. Rep. 417, the court held that an officer while wrongfully suspended can not recover salary, "for the reason that salary and perquisites are the reward of express or implied services, and therefore can not belong to one who could not lawfully perform the services (citing *Smith v. Mayor,* supra)."

The court adds:

"Offices are held in this country neither by grant nor contract, nor has any person a vested interest or private right or property in them."

This case repudiates the English rule, because it recognizes that it does not apply here, and it also recognizes that salary results only from services, and not from title.

In *Jayne v. Drorbaugh,* 63 Ia. 711, 17 N. W. 433, a state in which the English rule is adopted, and based upon English cases, it is recognized that a salary does not necessarily go with the title. The court said:

"The right to compensation depends upon the performance of the duties, or at least there must be possession of the office in fact as distinguished from the mere right of possession."

In *Farell v. Bridgeport,* 45 Conn. 191, the court said that, as a rule, those only are entitled to salary who both obtain and exercise their offices, and that payment follows the actual discharge of the duties.

In *McAffee v. Russell,* 29 Miss. 84, it is said that a claimant having rendered no services has no right to compensation.

The majority opinion finds the dissenting opinion of the Chief Justice in the New Jersey case (*Stuhr v. Curran*) very persuasive, regardless of the fact that it is avowedly based on English cases, which, as has been pointed out, can not be authority on the question in this country. The Chief Justice says:

"These English adjudications are entirely uniform, and run through three or four centuries."

In many of the cases which form the basis of the rule

adopted in the majority opinion it is held that no one holds an office *to which he knows he has no title* has no right to compensation; which must be conceded; but these cases are used as authority in cases in which it can not be said that there is such knowledge, either actual or presumed.

The holder of an election certificate is not presumed to know the facts upon which his right to it rests, yet the rule is applied to such cases, as if he were wilfully usurping the office. The injustice of so doing is recognized in Michigan, though the English rule has been adopted there (*State v. Miller,* 24 Mich. 459, 9 Am. Rep. 131), in *Scott v. Crump,* 106 Mich. 288, 64 N. W. 1, 58 Am. St. 478, where it is held that an officer with a certificate of election is not an intruder or usurper, so that his salary could be denied him.

My objection is that a correct rule for some cases is made general and applied to other cases when there is no reason for its application.

Neither is it just to assume that an officer holding over, or claiming to have been appointed, under circumstances in which there is fair ground for his action, knows or should be presumed to know that he has no title.

This is illustrated in the instant case. The bank commissioner is a bonded officer, whose duties include the winding up of insolvent banks, and the performance of other important duties, and the public interest requires him to withhold the office from any demandant of whose right there is any doubt. A legal presumption is not indulged in to the injury of any one, unless it be necessary to the advancing of justice, and there is here no ground for presuming that plaintiff in error knew that he had no title to the office.

The hypothesis in this case is that the claim to the office is made in good faith; and that eliminates many of the cases whose basis is the bad faith of claimant.

In *Stuhr v. Curran, supra,* the New Jersey court recognized that the common law cases were not authority, and made clear the propriety of Stuhr's action, the injustice of denying him compensation, and the evil results of a rule

which denies to an incumbent, in good faith, all right to compensation, if another subsequently establishes title to the office. It shows that the evils suggested, in some cases, growing out of an allowance of fees to a *de facto* officer, are fairly offset by the dangers resulting from the contrary rule.

One of the grounds which has been given for holding a *de facto* officer entitled to recover for his services is that the public interest requires that the duties of an office be discharged; but, if an incumbent is subjected to the risk that, after having held the office in good faith, the compensation is going to another who has done nothing whatever, there would be little encouragement for a man to perform official duties in case of a dispute as to the right to the office.

If the right to compensation grows out of the title, regardless of everything else, it results that an officer *de jure* might with profit permit an officer *de facto* to perform the duties of the office. The former might engage in profitable business during the entire term, and be entitled to the salary in addition, while the other in good faith will have been acting in his official place.

This majority opinion calls attention to *Gaskill v. Atlantic City*, 89 N. J. L. 269, 98 Atl. 385, the facts in which it says "are quite like those here involved," holding that a *de facto* officer could not recover from the state. That case is not in conflict with *Stuhr v. Curran*, nor does it support the majority opinion in this case. The facts are radically different. The ground of the decision, as stated by the court, was that "an unauthorized person, who gains possession of an office by force, with full knowledge that his title thereto is disputed by the lawful incumbent, has no right of action against the public for the prescribed salary during such usurpation."

If it is true, as the opinion states, that "emoluments follow and are inseparable from the legal title," how can the state refuse salary to the *de jure* officer on the ground that it has paid a *de facto* officer?

If the right to salary is vested in the holder of the title, it can not be divested by payment to any one else. It follows that our decisions repudiate the doctrine stated in this opinion and just quoted.

A public officer is an agent of the state, and his acts, within the sphere of his official duties, are valid upon the same basic principle as that upon which the acts of agents within the apparent scope of their authority are held binding upon their principals. The reasons which relieve the public from inquiry as to the title of *de facto* officers do not apply in the case of a demand of the state for salary. The principal must be resumed to know whether or not one acting as his agent has right to do so, if that question is in issue. Moreover, the state has the means, and may take the time, to determine the question, the absence of which circumstances on the part of individuals is the principal ground of holding acts valid as to them.

It has been said that:

"The *de facto* doctrine is one of those legal makeshifts by which unlawful or irregular corporate or public acts are legalized for certain purposes on the score of necessity." *In the Matter of Ringier & Co.,* 204 N. Y. 30, 97 N. E. 593, Ann. Cas. 1913C 1036.

Obviously, there is no necessity for applying it in an action against the state for salary or fees.

Therefore, the only logical basis for paying salary to one in office, without determining his title, is that he has discharged the duties of the office. This is recognized in *El Paso County v. Rhode,* 41 Colo. 258, where the court gives as the reason for holding that the *de jure* officer could not recover from the county the fees allowed to the *de facto* officer that "the people can not be compelled to pay twice for the same services." Certainly there is here no recognition of any right to compensation without services, and merely because of title to office.

Hence, our cases sustain the principle for which I am now contending, and which many courts have recognized, as above shown.

I can conceive of no ground of public policy upon which, of two claimants for an office, the one who has, in good faith, and with reasonable basis for his claim, discharged the duties of the office, should be denied compensation, and it be given to the other, who has done nothing.

In every case the question of good faith may be determined in an action by the *de jure* officer against the *de facto* officer for damages.

A rule of law which punishes the innocent as well as the guilty, when the cases are easily distinguishable, ought not to be adopted, and this is especially true when the rule has no real foundation in either reason or authority.

The judgment should be reversed.

CHIEF JUSTICE HILL, *Dissenting*:

Regardless of the conclusion of the majority, which the opinion states is supported by the weight of authority, I am not convinced of its justness or that all the declarations therein contained will stand the test of time as the law of this state. As I view it, Mr. McFerson has no place as a party in this action of mandamus. *McAffee v. Russell*, 29 Miss. 84. It is conceded that Mr. Drach, plaintiff in error, had possession of the office and performed the services during the period for which he sought the salary. It is also conceded that he was acting in good faith, and that, had this suit been instituted and tried during the period he was holding the office, the writ would have issued in his favor as a matter of course. Per former decisions of this court, as well as our Court of Appeals, the auditor has no right to question the *de facto* officer's right to the salary. *Thompson v. Denver*, 61 Colo. 470, 158 Pac. 309; *El Paso County v. Rhode*, 41 Colo. 258, 95 Pac. 551, 16 L. R. A. (N. S.) 794, 124 Am. St. 134; *Henderson v. Glynn*, 2 Colo. App. 303, 30 Pac. 265. I do not think that the *de jure* officer, after having been so declared by this court, has the right to do so by intervening in a mandamus action between the *de facto* officer and the auditor. In making this declaration, I am not claiming that Mr. McFerson has no cause of action against Mr. Drach for damages upon account of

having been kept out of the office, or, that he might not, in a proper proceeding, by showing that Mr. Drach was insolvent, or attempting to place his property beyond the jurisdiction of the court, or something that way, have the warrants withheld until the question of his damage was determined, but no such conditions are even hinted at here. However, as I view it, these questions of procedure are of but minor importance.

That portion of the opinion which I think is fundamentally wrong is the declaration, in substance, that under all such conditions the *de jure* officer is entitled to all of the emoluments of the office, even though its duties have been discharged by the *de facto* officer during the time the office was unlawfully held by him. This, as I take it, means all fees or salary, as the case may be. When I say "unlawful," I mean to distinguish it from wrongful, so far as the moral viewpoint is concerned. There certainly have been many cases, and as certain will be many more, where an office is retained by the holder of a certificate of election pending the result of a contest, and thereafter a review by this court, thus held in the utmost good faith, yet where the ultimate outcome was against him, and in some cases where even then it was the incumbent's duty to thus continue. Take a case where the result hinges upon the right of certain electors to vote at that election in certain precints, or counties, depending solely upon questions of fact, is it right to hold that the party holding the certificate must determine in advance of a judgment whether he was elected, or, at his peril, as a penalty for holding on, to lose all compensation for the services rendered, pending its determination, even though it can be shown that the contestor during said period earned a larger amount than the fees or salary of the office? To put it another way, suppose he holds onto the certificate of election, yet arranges with the contestor to take possession pending the decision, with the understanding that the contest suit continue, and it is ultimately adjudged that the contestee was entitled to the office, should the contestor be thus penalized? If this illustration is not

practical, suppose the contestor for a county office wins, and the contestee brings it to this court, but surrenders the office, and does not ask for a supersedeas, yet wins in the long run, is it just and right that the contestor be subject to this penalty for taking what is given to him by a judgment of a court of competent jurisdiction, although thereafter reversed? Likewise, as here, where able counsel and even members of this court disagree over the effect of an appointment by the governor. If this rule announced by the majority is to remain as the law of this state, it means that where any person runs, say, for a county office, receives the certificate of election, and thereafter a contest is filed against him, and determined in his favor by the trial court, is brought to this court by writ of error and reversed, say two years thereafter, and he is held not entitled to the office, that, although acting in the best of faith, he performs the duties during this entire period on the strength of the certificate of election, and judgment of the trial court that, nevertheless, he is liable to the *de jure* officer for the entire amount of the salary or fees earned, and this regardless of the damage to the other person, and even though the *de jure* officer, during the entire time, was getting a salary elsewhere, greater than he would have received had he held the office. To bring the facts within this case, the record discloses that Mr. Drach was regularly appointed on January 6, 1914, to fill a vacancy in the office of state bank commissioner, which appointment was approved by the Senate; that he qualified and continuously performed the duties until July 5th, 1916. It is not claimed that he was not acting in the best of faith in assuming that the civil service law entitled him to the office, or that in any event he was entitled to hold under his appointment until the first Wednesday of April, 1916, as set forth in the *quo warranto* action. It is also conceded that he was acting under the advice of able counsel. In addition, this court, or at least some of its members, expressed a question concerning the correctness of this judgment, which is evidenced by granting him a supersedeas, yet regardless of

all this, the ruling is to the effect that the warrants are not to be issued to him, although he performed the services, but are to be issued to Mr. McFerson, whom it is conceded did not perform the services, without any credit being given to Dr. Drach for their performance, and in a mandamus action between Mr. Drach and the auditor, wherein Mr. Drach was given no opportunity to show anything. in mitigation of Mr. McFerson's damages. Is it not proper to assume that one possessed of the ability of either of these gentlemen along banking lines has more than an average earning capacity? Our statute requires a bank examiner to give his time to the performance of the duties of the office, and who can say, when the question was not allowed to be litigated, what Mr. McFerson earned during this period, or that he may not have been earning a salary greater than what he· would have received from the state had he devoted this time to the office? If such is the case, or in case he received any compensation for any part of his time during said period, in equity and good conscience ought not such fact to be taken into consideration in an adjustment of the matter between them?

Under my assumption that Mr. McFerson had an earning capacity during this period, and that he used it for at least a part of this time, or if he did not, he ought to, is it fair, just, right or equitable to allow Mr. Drach nothing for the services rendered, and thereby place Mr. McFerson in a better position financially than he would have been had he held the office? I do not think so, and can not agree that this arbitrary declaration is supported by all the well reasoned authorities. In *Mayfield v. Moore*, 53 Ill., 428, 5 Am. Rep. 52, the court followed the English rule in holding that the person entitled to the office has a property right in it, in the nature of a franchise, but when it came to a question of fees during the period it was held by the *de facto* officer, in good faith, it declined to follow the English doctrine by recognizing that the equity of the parties were entitled to be taken into consideration. In passing upon this phase of the case, at page 433, the court said: ·

"Inasmuch, however, as appellee obtained the certificate of election, and a commission was issued to him, he was acting in apparent right, and, so far as this record discloses, he resorted to no fraudulent or improper means to produce that result, he does not occupy the position he would had. he resorted to such a course. He should only be required to account for the fees and emoluments of the office received by him, after deducting reasonable expenses in earning them. This being an equitable action, it should be governed, in this respect, by the same rules that would obtain had this been a bill for an account, instead of an action for money had and received. He should have only a reasonable allowance for the necessary expense."

This principle is recognized in *The Auditors v. Benoit,* 20 Mich. 176, 4 Am. Rep. 382. The same rule is laid down in *Havird v. County Commissioners of Boise County,* 2 Idaho 687, 24 Pac. 542; *Sandoval v. Albright,* 14 N. M. 345, 93 Pac. 717, and *Bier v. Gorrell,* 30 W. Va. 95, 3 S. E. 30, 8 Am. St. 17. While these cases involved fees, and not salaries, in my opinion there is no difference in principle between the two. In this respect, I agree with the Supreme Court of Washington in *Samuels v. Harrington,* 43 Wash. 603, wherein, at page 605, 86 Pac. 1071, 1072, 117 Am. St. 1075, in passing upon this question, the court says:

"On principle there can be no difference between the fees of an office and the salary of an office with respect to the property rights of the officer *de jure* therein. If the right to an office carries with it a property right in the salary of the office, so does the right to the office carry with it a property right in the fees of the office, and the payment of the one to an officer *de facto* is no more a wrongful payment than is the payment of the other."

Inasmuch as my views are in the minority, I have not felt justified in giving to the damage phase of this question the time I otherwise would. As at present advised, I am of the opinion that an office in Colorado is not a franchise or property right, but that the person duly elected or regularly appointed has a legal right to possession of such

office, which includes the opportunity of earning and receiving its fees or salary, and that he has a cause of action against any one who prevents him from so doing, and that the measure of the damages, when applied to a case of this kind, should be the amount actually sustained, not exceeding the maximum amount of the salary, and that the proof should be the same as in any other case where a person has a contract of employment for a certain term, and is ready and willing to perform, yet is unlawfully kept from doing so. This to include, as in other cases, the showing of seeking other employment, the success, if any, in so doing, the result and the deduction in damages, if any, as the result of such other employment. This would be fair and equitable, and would not tend to prohibit a timid person, or one who lacks finances, from honestly and in good faith asserting his right to an office given him by a certificate of election, or by the judgment of a trial court, for fear of the heavy penalty to follow, per the rule announced by the majority, should the contest against him be ultimately sustained.

I appreciate that my views on this phase of the case are not in apparent harmony with *The People v. Miller*, 24 Mich. 458, 9 Am. Rep. 131, and *Comstock v. Grand Rapids*, 40 Mich 397; however, I can not agree with the reasoning in the first of these cases, upon which both are based. Of course, if this reasoning, announced in 1872, which is to the effect that a public office is intended as a sinecure, that there are very few duties which can not be performed by deputies to be paid by the county outside of the incumbent's salary, and that the salary is not dependent upon the work, and that the office does not require the personal services of the incumbent, and that he would not forfeit it or the salary by having the bulk or all of his duties performed by deputies, and paid therefor by the county, are sound, and that an office is to be likened unto a pedestal upon which a person is to be elevated, with the salary as a gift or donation by the people for the privilege of being allowed to elevate the incumbent to the office, then I might be com-

pelled to concede that one would be entitled to all the salary, although earned by another; but such is not the case here. Per our statute, this office calls for the time and individual attention of the appointee; besides, according to former rulings of this court, there is nothing specially sacred about an office of this kind. It can be abolished and the salary discontinued. In such case, as I view it, there is no reason for a rule which fixes the measure of damages any different concerning compensation for the performance of its duties than applies to any other case where one is unlawfully prevented from performing certain services which he has the right to perform and to receive the compensation therefor.

Decided April 1, A. D. 1918.   Rehearing denied May 6, A. D. 1918.